JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of Judge Peggy Foley Jones that granted summary judgment to MetroHealth Medical Center ("MetroHealth") on Mattie Johnson's (f.k.a. Wood) claims of employment discrimination and wrongful termination. Johnson claims that the judge erred in rejecting her claims of disability and racial discrimination, considered inadmissible evidence, and incorrectly found her wrongful termination claims barred by res judicata. We affirm.
 {¶ 2} In 1990, MetroHealth hired then forty-year-old Johnson as a Medical Team Assistant in its ambulatory surgery department where she remained until April of 1996, when she was terminated under an attendance policy in effect at the beginning of that year. She filed a grievance under her union's collective bargaining agreement ("CBA") and, following a hearing, the arbitrator ruled that, although she had accumulated enough absences to qualify for firing, MetroHealth failed to give her a required warning notice before termination. The arbitrator ordered MetroHealth to rehire Johnson in a comparable position but did not award her back pay because he considered her record of continued absences "precipitated the events leading to her discharge." He also found MetroHealth's failure to give her a final warning was mitigated by the circumstances because she had accumulated a number of absences in a single week, which triggered the attendance policy's final notice provision and its discharge provision before she returned to work.
 {¶ 3} Johnson appealed the ruling under R.C. 2711.10, but the appeal was dismissed because the arbitration was undertaken by her union and she lacked standing to pursue her grievance individually.[1] She also filed a complaint against her union alleging that it failed to properly represent her, but the case was dismissed for lack of jurisdiction because her claim alleged an unfair labor practice under R.C. 4117.11(B)(6), which required her to bring the claim before the State Employee Relations Board.[2]
 {¶ 4} She then filed this action against MetroHealth, alleging racial discrimination, disability discrimination, and wrongful termination under the CBA. She asserted racial discrimination because she is white and was terminated under the attendance policy, although black employees who also violated the policy were retained; disability discrimination because she had a history of treatment for cancer, which she alleged was the reason for her termination; and wrongful termination under the CBA because of the arbitrator's finding that she was fired without adequate notice under the attendance policy. An amended complaint added challenges to the arbitration proceedings and claimed MetroHealth had interfered with her right to pursue the arbitration personally.
 {¶ 5} The judge found that Johnson's claims based on the CBA and the arbitrator's decision were barred by res judicata and granted judgment on the pleadings on those claims. She granted MetroHealth's motion for summary judgment on the other two claims, finding that Johnson was fired because of her attendance record and not because of her race or disability. She also found Johnson failed to establish that she had a disability eligible for protection under R.C. 4112.02, and that she had failed to show she was "similarly situated" to the black employees who had also violated the attendance but were allegedly retained.
 {¶ 6} Johnson asserts four assignments of error set forth on Appendix A.
 Disability Discrimination {¶ 7} We review the grant of summary judgment de novo, and consider the evidence in the light most favorable to the non-moving party to determine whether a material dispute of fact exists.[3] If the party requesting summary judgment presents evidence showing its entitlement to judgment as a matter of law, the non-moving party must then present evidence showing a dispute of material fact.[4] In order to prove disability discrimination under R.C. 4112.02, Johnson must show: (1) she has a qualifying disability; (2) that she was fired at least in part because of her disability; and (3) that her disability does not prevent her from performing her job.[5] She first claims the judge applied an incorrect definition of "disability" in concluding she was not protected.
 {¶ 8} Johnson was treated for thyroid cancer between 1975 and 1977, and presented evidence that she was treated for a relapse of the cancer while employed at MetroHealth. She claims that her history of cancer qualifies her as disabled under the definition set forth in R.C. 4112.01(A)(13), and that the judge used an incorrect definition to conclude she was not disabled. We agree with this portion of Johnson's argument.
 {¶ 9} The judge found Johnson was required to show that she "has an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives[,]" or that MetroHealth regarded her as having such an impairment. However, this definition of disability, which is derived from federal anti-discrimination law, no longer comports with the definitions in Ohio statutes. Therefore, even though Ohio courts have traditionally looked to federal cases for guidance in this area,[6] such guidance is relevant only to the extent that Ohio statutes and federal statutes use the same definitions. In Columbus v. McGlone,
supra, the Ohio Supreme Court recognized that Ohio's definitional statute, R.C. 4112.01, had been amended in 1992. Although the court applied the federal standard in that case because the pre-1992 version of R.C. 4112.01 applied, the court implicitly recognized that federal law might not be concurrent with Ohio's amended statute.[7]
 {¶ 10} R.C. 4112.01(A)(13) states:
"Disability" means a physical or mental impairment thatsubstantially limits one or more major life activities, includingthe functions of caring for one's self, performing manual tasks,walking, seeing, hearing, speaking, breathing, learning, andworking; a record of a physical or mental impairment; or beingregarded as having a physical or mental impairment.
 {¶ 11} Contrary to the judge's decision and MetroHealth's argument, this statute does not require all physical or mental impairments to substantially limit a major life activity before qualifying as disabilities, nor does it require that an employer regard an impairment as limiting a major life activity. The definition allows the term "disability" to be satisfied in three ways; two of which refer only to a physical or mental impairment, without reference to whether that impairment limits major life activities or is perceived to limit such activities.
 {¶ 12} Not only do two of the three alternatives in R.C.4112.01(A)(13) fail to qualify the term "physical or mental impairment," R.C. 4112.01(A)(16) defines that term and clarifies its use in the definition of "disability." Under R.C.4112.01(A)(16)(a)(iii), cancer qualifies as a physical or mental impairment and, even though Johnson concedes that her condition did not limit a major life activity, she correctly asserts that she satisfied one of the other alternative definitions of "disability" in R.C. 4112.01(A)(13).
 {¶ 13} Under those alternatives she had only to show the "physical or mental impairment" defined in R.C. 4112.01(A)(16); she was not required to show a record of substantially limited activity, nor was she required to show that her employer regarded the impairment as limiting a major life activity. Therefore, the judge erred in grafting a "substantial limitation" requirement onto each alternative definition of "disability" in R.C.4112.01(A)(13).
 {¶ 14} The separate opinion argues that the difference between Ohio's statutory definition of disability and the comparable federal definition is negligible, and that Ohio's statute is not intended to achieve different results. But if this were true the Ohio legislature could have used language identical to that in the federal statute. As written, the Ohio statute takes the salutary step of protecting individuals, such as Johnson, who are regarded as having an impairment that might become burdensome to the employer or limit the employee's major life activities in the future, even though the impairment is not currently debilitating.
 {¶ 15} I understand the fear that this interpretation of R.C.4112.01(A)(13) will allow persons to claim disabilities based on insubstantial impairments. But the definition does not allow a nearsighted person to recover damages because of his exclusion from a job that requires a certain level of uncorrected vision. To show disability discrimination, an employee must still prove the ability to perform the job. The McGlone Court could have reached the same result under the current statute, although the court would have been forced to rule on whether the vision requirement was a significant and proper qualification for the job of firefighter.
 {¶ 16} The separate opinion's interpretation of R.C.4112.01(A)(13) is underinclusive, because it allows employers to discriminate on the basis of impairments that might burden the employer even though they do not limit an employee's job functions. However, the Ohio legislature did not adopt such a limited definition, even though a model was readily available. Instead, the legislature sought to prevent employers from rejecting candidates or firing employees based on health or other issues not related to job performance, even if those issues do not limit a major life activity.
 {¶ 17} Although R.C. 4112.01(A)(13) does not include the same definitional limitations as the federal statute, federal guidelines are still relevant to determine whether an employer regarded a claimant as disabled. Both statutes attempt to prevent employers from taking adverse action based on perceptions that an impairment exists when it does not, or that an impairment disqualifies one from employment when it does not. However, requiring the plaintiff to show that the employer regarded her as "substantially limited" threatens to add an unnecessary, unintended element to the cause of action.
 {¶ 18} The federal statute essentially requires a plaintiff to show: (1) that the employer regarded her as impaired; (2) that the employer regarded the impairment as substantially limiting a major life function; (3) that the employer took adverse action because it regarded the impairment as substantially limiting, and; (4) that the plaintiff was capable of performing the job in question. Without the "substantially limiting" language, the cause of action requires the plaintiff to show: (1) that the employer regarded him as having an impairment; (2) that the employer took adverse action based upon the perceived impairment, and; (3) that the plaintiff was capable of performing the job in question, with or without reasonable accommodation.
 {¶ 19} In either case, Metrohealth would be liable if it dismissed Johnson based on a belief that her cancer made her unable to perform her job. Under federal law, such a decision would be tantamount to a conclusion that Johnson was "substantially limited" in her ability to work. But under Ohio's statutory definition of impairment, there would be no need to determine whether Johnson was regarded as substantially limited, because the cause of action would require her to prove only that she had a history of cancer, that Metrohealth fired her, at least in part, because of her history of cancer, and that she was capable of performing her job.
 {¶ 20} The latter formulation shows that a "substantial limitation" requirement adds nothing of value to the cause of action, because the employee's limitations, so far as they are relevant, are considered when determining whether she was capable of performing the job in question. If an employer takes adverse action based upon an impairment that does not impede job function, the action is unjustified, regardless of whether the employer considered the employee "substantially limited." For example, if an employee is fired because he contracts HIV, the employer should not be allowed to justify the action by claiming that the employee is not substantially limited and, thus, can get a job elsewhere.
 {¶ 21} The substantial limitation requirement does not prevent undeserving plaintiffs from recovering, because a plaintiff cannot recover without showing an ability to perform or the lack of a reasonable accommodation. In such cases, the substantial impairment requirement merely acts as a convenient shortcut, because the same result could be achieved by a determination that the employee is incapable of performing the essential functions of the job in question, and that no reasonable accommodation can correct the problem. The requirement does, however, have the potential to allow defendants to escape liability by showing that they did not regard an impairment as disabling, even though they took adverse action because of the impairment.[8] Although federal decisions have attempted to soften the sting of this unfairness by claiming that such discrimination can be addressed through laws regulating pension or health care plans,[9] such laws do not cover all employees, nor do they protect job applicants.
 {¶ 22} The separate opinion cites a number of authorities for the proposition that Ohio law is the same as federal law with respect to the substantial limitation requirement. McGlone,
however, does not stand for the proposition that Ohio law and federal law are the same. Similar does not mean identical, and guidance is not the same as a mandate. Although numerous cases recite the substantial limitation requirement, no Ohio court has expressly addressed the argument made here, which is that the difference between Ohio's statutory definition of disability and that of the corresponding federal statute should be recognized and applied. Despite the separate opinion's citations, this issue has not been addressed and settled, and the plain language of the statute points away from applying the substantial limitation requirement of federal law.
 {¶ 23} Although the judge misinterpreted the term "disability" as defined in Ohio's anti-discrimination statutes, this error does not require reversal because MetroHealth presented a non-discriminatory basis for Johnson's firing and she failed to rebut that evidence. Like other forms of employment discrimination, a prima facie claim of disability discrimination can be made by showing membership in a protected class and adverse employment action taken despite the employee's qualification for the job.[10] The employer can respond to such proof, however, by showing a nondiscriminatory reason for its action, and the plaintiff must then show that the employer's explanation is a pretext.[11]
 {¶ 24} MetroHealth presented evidence that Johnson was terminated after violating its attendance policy and, although an arbitrator found she was fired without proper notice, he also ruled that MetroHealth properly found her in violation of the policy. Johnson has alleged that the attendance policy was a pretext for her firing, and that she was actually fired because her medical history threatened to cost MetroHealth money under its new self-insured health insurance program. She failed, however, to present any evidence in support of that claim, and the allegation alone is insufficient to defeat summary judgment.[12] The first assignment is overruled.
 Racial Discrimination {¶ 25} Johnson's racial discrimination claim is analyzed under standards similar to her disability claim, although the protected class is defined differently. MetroHealth's affirmative defense, that she was fired for excessive absences, also applies here, but Johnson presented evidence that five black employees were not fired even though each had violated the 1996 attendance policy. This evidence, however, is relevant to show pretext only if the other employees were "similarly situated" to Johnson.
 {¶ 26} If a discrimination claim is based on evidence that employees outside the protected class were retained despite engaging in similar conduct, then the plaintiff must show she was similarly situated, in all relevant respects, to the retained employees.[13] This does not mean that the employees' circumstances must be identical, or that they must be similarly situated in all respects. The judge must assess individual circumstances to determine whether similarities or differences are relevant to the particular claim.[14] Therefore, even though MetroHealth cites evidence that Johnson did not have the same immediate supervisors and did not work in the same facility as those employees, these facts do not require a per se finding that she is not similarly situated with those employees. Johnson presented sufficient evidence that the ultimate decision to fire or retain employees at either location was made by a central human resources department, and employment decisions at all locations could reflect a policy or pattern in effect throughout all departments.
 {¶ 27} Nevertheless, she failed to present evidence showing the similarities between her circumstances and those of the other employees; therefore, even though she could have overcome the facts that she did not share supervisors or a work location with those employees with whom she seeks to compare, she failed to do so. A plaintiff bears the burden of showing that she is similarly situated to allegedly comparable employees,[15] and Johnson presented no evidence of the other employees' circumstances beyond the fact that they had the same job title and accumulated enough absences under the attendance policy to be eligible for firing. The facts that she worked in a different department, at a different location, and with different immediate supervisors, while not conclusive, required Johnson to present further evidence showing similarity, such as evidence that she and the other employees shared particular mitigating or aggravating circumstances.[16] Johnson has not shown that her circumstances are sufficiently similar to those of the retained employees, and there is no other "circumstantial or statistical evidence supporting an inference of discrimination."[17]
The fourth assignment is overruled.
 Wrongful Termination Under the CBA {¶ 28} The judge found that the arbitration procedure was the exclusive means of pursuing a wrongful termination claim based on the CBA provisions; therefore, she found claims based on the CBA were precluded by statute and barred by res judicata, and granted MetroHealth judgment on the pleadings. Johnson submits the arbitration procedure did not extinguish her individual rights, but applied only to the union's grievance on her behalf. In the alternative, she argues that both the union and MetroHealth interfered with her "statutory right to arbitrate the grievance."
 {¶ 29} This portion of the complaint refers to her right to personally participate in the arbitration, but this issue was already addressed in Johnson I, in which this court denied her appeal of the arbitration award because her personal right to grieve was extinguished when the union represented her in the grievance.[18]
 {¶ 30} Johnson contends that finding that she lacked standing to appeal the arbitrator's ruling shows that those proceedings cannot bar her current action. However, the Johnson I decision makes clear that a person has a choice to pursue a grievance personally or through union representation, and that the choice to use union representation bars the later assertion of individual grievance rights. Therefore, the arbitration proceedings act as res judicata to a personal action based on the same facts because the union pursued the grievance and arbitration on her behalf. Although she claims that finding her claims barred defeats the purpose of R.C. Chapter 4117, we find the opposite; allowing her to pursue a personal claim after invoking union representation would give her an extra opportunity to litigate the same claim. The provisions of R.C. Chapter 4117 do not indicate an intent to allow such an extraordinary result. Because the claims based on the CBA have already been litigated, the third assignment is overruled.
 Consideration of Inadmissible Evidence {¶ 31} Johnson contends the judge erred in considering her testimony from an unfiled deposition transcript, and in considering evidence of her attendance record prior to the MetroHealth 1996 policy. However, even without resort to this evidence, her remaining assignments of error fail and we have overruled her assignments of error without reference to it. Even if the judge improperly considered this evidence, any error in considering it is harmless because we can affirm the judgment on other grounds.[19] Therefore, the second assignment of error is moot, as is that portion of the fourth assignment that alleges the judge considered inadmissible evidence.[20]
 {¶ 32} Judgment affirmed.
 APPENDIX — ASSIGNMENTS OF ERROR "I. It was error for the trial court to dismiss the claim forhandicap discrimination.
 It was error for the trial court to accept evidence from anunfiled deposition.
 It was error for the trial court to dismiss the claim incontract.
 It was error for the trial court to dismiss the claim forracial discrimination."
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMonagle, J., concurs in judgment only (see separateconcurring opinion).
Dyke, J., concurs in judgment only and concurs with separateconcurring opinion.
[1] Johnson v. Metro Health Med. Ctr., Cuyahoga App. No. 79403, 2001-Ohio-4259 (Johnson I).
[2] Johnson v. Ohio Council Eight (2001),146 Ohio App.3d 348, 766 N.E.2d 189 (Johnson II).
[3] Civ.R. 56(C); Stephens v. A-Able Rents Co. (1995),101 Ohio App.3d 20, 26, 654 N.E.2d 1315.
[4] Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107,662 N.E.2d 264.
[5] Columbus Civ. Serv. Comm. v. McGlone, 82 Ohio St.3d 569,571, 1998-Ohio-410, 697 N.E.2d 204.
[6] McGlone, 82 Ohio St.3d at 573.
[7] Id. at 571-572.
[8] Christian v. St. Anthony Med. Ctr., Inc. (C.A. 7, 1997),117 F.3d 1051, 1053.
[9] Id.
[10] Plumbers Steamfitters Joint Apprenticeship Commt. v.Ohio Civ. Rights Comm. (1981), 66 Ohio St.2d 192, 197, 20 O.O.3d 200, 421 N.E.2d 128; see, also, Helmick v. Cincinnati wordprocessing, Inc. (1989), 45 Ohio St.3d 131, 134 n. 2,543 N.E.2d 1212 (similar evidentiary standards apply to claims under R.C. Chapter 4112 regardless of claimed basis for discrimination).
[11] Plumbers Steamfitters Joint Apprenticeship Commt.,66 Ohio St.2d at 197-198.
[12] Dresher, supra.
[13] Ercegovich v. Goodyear Tire Rubber Co. (C.A. 6, 1998),154 F.3d 344, 352-353.
[14] Id.
[15] Id.
[16] Id. at 352, citing Mitchell v. Toledo Hosp. (C.A. 6, 1992), 964 F.2d 577, 583.
[17] Ercegovich, 154 F.3d at 352, citing Mitchell, supra.
[18] Johnson I, supra (stating that individual right to bring grievances exists "only before the employee invokes union representation.").
[19] Joyce v. Gen. Motors Corp. (1990), 49 Ohio St.3d 93, 96,551 N.E.2d 172.
[20] App.R. 12(A)(1)(c).