OPINION
{¶ 1} Ron Vickers and his wife are the plaintiffs in this action against Wren Industries and its subsidiary Jena Tools and some individually named defendant employer managers of the defendants and are appealing from the grant of summary judgment to all the defendants by the trial court in the plaintiffs' action for wrongful discharge. On appeal, the plaintiffs are bringing the following eight assignments of error:
 {¶ 2} "1. The trial court erred when it refused to allow plaintiff's age discrimination claims to proceed forward even though they were timely filed.
 {¶ 3} "2. The trial court erred when it granted defendant's summary judgment on plaintiff's disability discrimination claim because the trial court failed to realize that cancer is a disability pursuant to revised code section 4112.01(A).
 {¶ 4} "3. The trial court erred when it refused to recognize a public policy protecting sick workers and when it determined that plaintiff could not bring a termination in violation of public policy for discrimination.
 {¶ 5} "4. The trial court erred when it did not recognize a contract between the plaintiff and defendant for the plaintiff to have lifetime employment and that plaintiff was not an employee at-will.
 {¶ 6} "5. The trial court erred when it determined that since plaintiff was an employee at-will, he could not maintain a claim for promissory estoppel.
 {¶ 7} "6. Defendants are responsible for the negligent misrepresentations they made to plaintiff.
 {¶ 8} "7. The trial court erred when it granted defendants' motion for summary judgment on plaintiff's claim for intentional infliction of emotional distress because defendants' conduct was outrageous.
 {¶ 9} "8. The trial court erred when it granted defendants' motion for summary judgment on plaintiffs' loss of consortium and punitive damages claim."
 {¶ 10} The facts of the matter and the legal analysis of the trial court are found in its decision overruling the plaintiffs' motion for summary judgment and sustaining all the defendants' motions for summary judgment, as follows:
{¶ 11} "FACTS
 {¶ 12} "Wren Industries operates Jena Tools (hereinafter collectively `Wren' or `Defendant'), a tool and die manufacturing facility, whose workforce is separated into two divisions: the `die side' and the `detail side.' The individually named Defendants, Dave Whitehead (`Whitehead'), Ron Barr (`Barr'), Bill Steele (`Steele'), and John Roellig (`Roellig') (hereinafter collectively `Defendants') are all managers, except Roellig, who is employed in the Human Relations Department. Plaintiff, Ron Vickers (hereinafter `Mr. Vickers' or `Plaintiff') was a die builder for Wren from March 12, 1990 until his termination on September 7, 2001. Mr. Vickers was fifty-eight years old at the time of his termination. His wife, Diana Vickers (hereinafter `Mrs. Vickers' or `Plaintiff'), is also a Plaintiff in this case.
 {¶ 13} "Mr. Vickers was diagnosed with lung cancer in January of 2001. Wren allowed Mr. Vickers a flexible work schedule while he underwent radiation and chemotherapy treatments. In April 2001, Mr. Vickers' treatment ended and he resumed a normal schedule. In August 2001, Mr. Vickers informed Wren that he needed September 11, 2001 off for an appointment with a surgeon concerning the possibility of more cancer and the required surgery to remove it.
 {¶ 14} "In early 2001, Wren laid off employees working on the detail side due to an economic downturn. In August of 2001, despite the fact Mr. Vickers and the other die builders were working overtime, Wren was forced to lay off die side employees because of a lack of incoming work. Whitehead asked Barr and Steele to create a list of potential employees to lay off. At this time, Barr had been the shop foreman for the die side for a few weeks. After receiving both lists at the end of August, Whitehead chose three employees to lay off. On September 7, 2001, these employees, including Mr. Vickers, were laid off.
 {¶ 15} "Plaintiffs move the Court for summary judgment on their claims for breach of contract, equitable and promissory estoppel, negligent misrepresentation, age and disability discrimination, common law discrimination, and discharge in violation of public policy. Defendants move the Court for summary judgment on all fourteen of Plaintiffs' claims. In addition to claims previously listed, this includes the claims of quantum meruit, breach of the duty of good faith and fair dealing, breach of fiduciary duty, intentional infliction of emotional distress, negligent infliction of emotional distress, loss of consortium, and punitive damages.
 {¶ 16} [The court then reviewed the applicable standard of review for grantng summary judgment].
{¶ 17} "LAW AND ANALYSIS
 {¶ 18} "I. Age Discrimination
 {¶ 19} "Ohio Revised Code section 4112.02(N) provides: `An aggrieved individual may enforce the individual's rights relative to discrimination on the basis of age as provided for in this section by instituting a civil action, within one hundred eighty days after the alleged unlawful discriminatory practice occurred, * * *. A person who files a civil action under this division is barred, with respect to the practices complained of, from instituting a civil action under section 4112.14 of the Revised Code * * *.' Under section 4112.99: `Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief.' Section 4112.99 provides an independent cause of action and does not include an express statute of limitations.Elek v. Huntington Natl. Bank (1991), 60 Ohio St.3d 135, 138,573 N.E.2d 1056. The Ohio Supreme Court's determination of the statute of limitations for claims brought under 4112.99 varies depending upon the type of discrimination: a six-year statute of limitation for sex discrimination claims under Cosgrove v. Williamsburg of Cincinnati
(1994), 70 Ohio St.3d 281, 638 N.E.2d 991, and a 180-day statute of limitation for claims based on age discrimination under Bellian v. BicronCorp. (1994), 69 Ohio St.3d 517, 634 N.E.2d 608.
 {¶ 20} "The Bellian court dealt with two issues: 1) determining the provision plaintiff was referring to when he alleged in his complaint for age discrimination that defendant violated 4112.99 and 2) determining what statute of limitations applied to 4112.99. Regarding the first issue, the court reasoned that since plaintiff's cause of action for age discrimination was brought under 4112.99 and the only provision in Chapter 4112 that recognized age discrimination was 4112.02, plaintiff had to be referring to an age discrimination claim under 4112.02. Bellianv. Bicron Corp. (1994), 69 Ohio St.3d at 519. But cf. Sterry v. Safe AutoIns. Co. (S.D.Ohio 2003), No. C2-02-1271 (criticizing Bellian' s
rationale as faulty after the General Assembly recodified R.C. 4101.17 as R.C. 4112.14, which provided a remedy for age-based discrimination). But see Senter v. Hillside Acres Nursing Ctr. of Willard, Inc. (2004),335 F.Supp.2d 836 (stating that the addition to Chapter 4112 of 4112.14, to which the six-year statute of limitations applies, does not require a different result where the 4112.99 civil action must be predicated on a violation of 4112.02(A)).
 {¶ 21} "Arguments that the enactment of 4112.14 vitiates Bellian's
rationale have no merit in the present situation. Unlike Bellian, in which the court had to rationalize the provision of Chapter 4112 that plaintiff's 4112.99 claim was brought under, the Plaintiffs in the present case have specifically invoked R.C. 4112.02. This Court need not utilize the Bellian rationale to arrive at the same result, i.e., plaintiff's civil action under 4112.99 refers to the age-based discrimination identified by 4112.02.
 {¶ 22} "Regarding the statute of limitations issue, the Bellian court recognized that although R.C. 4112.99 creates an independent civil action, there may be instances where it would conflict with more specific provisions of Chapter 4112, at which time the existing rules of statutory construction would be applied to address the conflicts. Bellian, at 519. Applying the Ohio rules of statutory construction, the court concluded that the specific provision (4112.02) prevails over the general provision (4112.99) and therefore, the statute of limitations under 4112.02(N) applies to age discrimination actions brought under 4112.99. Id. AccordDunn v. Medina Gen. Hosp. (1996), 917 F.Supp. 1185, 1192 (holding that claims for age discrimination under R.C. 4211.02 and 4211.99 were time barred because they were not filed within the 180-day limitations period). But cf. Ferraro v. The B.F. Goodrich Co., 149 Ohio App.3d 301,312, 2002-Ohio-4398, 777 N.E.2d 2282 (holding that Bellian's statutory construction rationale is inapplicable when two specific statutes, 4112.02(N) and 4112.14, creating the causes for age discrimination are at issue), and Ziegler v. IBP Hog Mkt., Inc. (2001), 249 F.3d 509 (holding that Bellian is not controlling when dealing with two specific statutes).
 {¶ 23} "The Bellian court's rationale for determining that the 4112.02(N) statute of limitations governed 4112.99 is applicable here. Unlike Ferraro and Ziegler, but similar to Bellian, a general statute (4112.99) and a specific statute (4112.02(N)) are at issue in the case sub judice. Therefore, pursuant to Bellian and according to the rule of statutory construction, the statute of limitations applicable to Plaintiffs' R.C. 4112.99 claim is 180 days. Plaintiffs' argument that an age discrimination claim was timely brought under 4112.14 is not well taken. Plaintiffs neither brought a claim pursuant to 4112.14 nor would be able to since Plaintiffs already filed a civil action under 4112.02. Both 4112.02(N) and 4112.14 provide that they are mutually exclusive remedies and that the filing of a civil action under one provision bars the institution of proceedings under the other. R.C. 4112.02(N); R.C.4112.14; Ferraro, 149 Ohio App.3d at 313.
 {¶ 24} "The statute of limitations period applicable to age discrimination claims brought under Chapter 4112 begins to run on the date of the employee plaintiff's termination from the employer defendant. Oker v. Ameritech Corp. (2000), 89 Ohio St.3d 223, 224,2000-Ohio-139, 729 N.E.2d 1177. Plaintiff Mr. Vickers was terminated on September 7, 2001 and filed his claim on July 23, 2002, well after the 180-day statute of limitations had expired. Therefore, because Plaintiffs' claims for age discrimination under 4112.02 and 4112.99 are time barred, Defendants are entitled to summary judgment in their favor on Plaintiffs' claims for age discrimination.
 {¶ 25} "Even if Plaintiffs could bring suit pursuant to 4112.02, 4112.14 or 4112.99, Defendants are entitled to summary judgment in their favor. A claim for age discrimination may be proven by either direct or circumstantial evidence. See Byrnes v. LCI Communication Holdings Co.
(1996), 77 Ohio St.3d 125, 128, 1996-Ohio-307, 672 N.E.2d 145. Absent direct evidence of age discrimination, a prima facie case of age discrimination may be established through indirect evidence by demonstrating that the employee 1) is a member of a protected class under 4112.02 or 4112.14, 2) was subject to an adverse employment decision, 3) is qualified for the position, and 4) was replaced by, or his discharge permitted retention of, a person of substantially younger age. Coryell v.Bank One Trust Co., 101 Ohio St.3d 175, 180, 2004-Ohio-723, 803 N.E.2d 781.
 {¶ 26} "The mere termination of a competent older employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination. Murphy v. East AkronCommunity House (1989), 56 Ohio App.3d 54, 57, 564 N.E.2d 742, citingLaGrant v. Gulf Western Mfg. Co. (C.A.6, 1984), 748 F.2d 1087, 1090. See also Gordon v. Universal Electronics, Inc. (Oct. 1, 1997), 9th Dist. No. 18071, citing Melms v. Society Bank Trust (1990),61 Ohio Misc.2d 431, 434 (`The age difference between an employee terminated during an economic cutback and a retained employee does not necessarily establish a prima facie age discrimination case.'). `Where there is no new employee hired as a "replacement" for the discharged employee but rather the discharged employee's job duties are redistributed among a number of employees, if one employee in that redistribution group is a member of the same protected class as the discharged employee, the fourth element * * * is "necessarily" not satisfied.' Fenton v. Time Warner Entertainment Co., Montgomery App. No. 19755, 2003-Ohio-6317, discretionary appeal denied by 102 Ohio St.3d 1410,2004-Ohio-1763, quoting Lincoln v. ANR Advance Transp. Co. (Nov. 13, 1998), Montgomery App. No. 16975 (citations omitted).
 {¶ 27} "The first three elements of the prima facie case are undisputed: 1) Mr. Vickers, age 58, was at least the age 40 and therefore a member of the protected class under 4112.01(A)(14), 2) Mr. Vickers was subject to an adverse employment action and 3) Mr. Vickers was qualified for the position as die maker. According to Plaintiffs, the mere fact that die builders and bench helpers with less experience and under 40 years old were not discharged as part of the reduction in force establishes the fourth prima facie element. Specifically, Plaintiffs rely on Plaintiffs' Exhibit 1 and point to the retention of Don Manning, a twenty year old employee hired as a bench helper in May 2001, and the retention of James Linville, who was 32 years old and employed less than five years as a diemaker. Although Plaintiffs' Exhibit 1 is evidence not specifically authorized by 56(C) and Plaintiffs fail to incorporate it by reference in a properly framed affidavit, `[a] court may consider other documents other than those specified in 56(C) if there is no objection.'Walther-Coyner v. Walther (June 2, 2000), Montgomery App. No. 18131, citing Brown v. Ohio Cas. Ins. Co. (1978), 63 Ohio App.2d 87. Likewise, since there is no objection, the Court may also consider Plaintiffs' Exhibit 1 as evidence that several of the retained die makers were in the protected class. Specifically, Chuck Norris was age 40, Bob Bratz was age 42, and Jim Rose, who was hired on June 25, 2001 was age 58. Even without consideration of Plaintiffs' Exhibit 1, the Court has evidence from Whitehead's deposition that after Mr. Vickers was laid off, the work that he would have done was distributed among the remaining die makers, which included Don Couch and Bob Bratz, who were both over forty. (Whitehead Depo. p. 28-30). Since the work Mr. Vickers would have received was distributed among the retained die makers, several of which were in the protected class, Plaintiffs fail to prove a prima facie case of age discrimination. Therefore, Defendants are entitled to summary judgment in their favor on Plaintiffs' claims for age discrimination.
 {¶ 28} "Furthermore, assuming arguendo that Plaintiffs presented sufficient evidence to satisfy all the elements of the prima facie case, Defendants have offered a legitimate, non-discriminatory reason for Mr. Vickers' discharge, i.e., a reduction in force.
 {¶ 29} "Once a prima facie case is established, an inference of discrimination arises shifting the burden of proof to the employer to articulate a legitimate non-discriminatory reason for the employee's discharge. Limberg v. Roosa, Montgomery App. No. 19988, 2004-Ohio-1480, citing Kohmescher v. Kroger Co. (1991), 61 Ohio St.3d 501, 575 N.E.2d 439. If the employer articulates a nondiscriminatory reason, then the presumption of discrimination raised by the prima facie case is rebutted and the employee's burden is to prove that the employer's articulated reason for the discharge is a pretext for discrimination. Id. A reason cannot be proved to be `a pretext for discrimination' unless it is shown both that the reason was false and that age discrimination was the real reason. Olive v. Columbia/HCA Healthcare Corp. (March 9, 2000), 8th Dist. Nos. 75249 and 76349, citing St. Mary's Honor Ctr. v. Hicks
(1993), 509 U.S. 502, 515-516, 113 S.Ct. 2742; Richmond-Hopes v. City ofCleveland (C.A.6, 1998), 168 F.3d 490, 490.
 {¶ 30} "Plaintiffs argue that Defendants' work force reduction explanation is a pretext for age discrimination and points to the fact that Defendants hired a die maker, Jim Rose, in June 2001 and three new bench helpers in May and June of 2001. In addition, Plaintiffs point out that in August 2001, die makers, including Mr. Vickers, were working overtime, work was still being handed out and `there was just no big signs to me of a major slow down.' (Vickers Depo. p. 125). Assuming this proves that Defendants reduction in force reason is false, Plaintiffs still have to prove that age discrimination was the real reason. Plaintiffs not only fail to do so, but the fact that the new die maker hire, Jim Rose, was the same age as Mr. Vickers indicates that Mr. Vickers' termination was NOT the result of age discrimination. Plaintiffs' other arguments also fail to make any link between age and the decision to terminate. Plaintiffs point out that Mr. Vickers was the highest paid die maker and that Defendants replaced the foreman, Mark Caudhill, who never would have suggested laying off Mr. Vickers, with a foreman who lacked familiarity with the die makers. However, `[n]o matter how distasteful certain employment decisions may appear to persons outside business management, absent a discriminatory intent, an employee will have no recourse under the discrimination laws.' Olive v.Columbia/HCA Healthcare Corp. (March 9, 2000), 8th Dist. Nos. 75249 and 76349 (holding that the fact termination resulted from high salary alone does not show intentional age discrimination), referring to Mauzy v.Kelly Services, Inc. (1996), 75 Ohio St.3d 578, 583, 664 N.E.2d 1272. As a matter of law, the plaintiff has failed to present evidence that age was the reason for Mr. Vickers' discharge. Therefore, Defendants are entitled to summary judgment in their favor on Plaintiffs' claim for age discrimination.
{¶ 31} "ii. Disability Discrimination
 {¶ 32} "Disability discrimination in employment situations is prohibited by R.C. 4112.02(A). In order to establish a prima facie case of disability discrimination, the person seeking relief must demonstrate that 1) he has a qualifying disability, 2) he was fired at least in part because of his disability and 3) his disability does not prevent him from performing his job. Hazlett v. Martin Chevrolet (1986), 25 Ohio St.3d 279,281, 496 N.E.2d 478. Once the plaintiff establishes a prima facie case, the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken. Plumbers v. SteamfittersJoint Apprenticeship Commt. v. Ohio Civ. Rights Comm. (1981),66 Ohio St.2d 192, 197, 421 N.E.2d 128. If the employer establishes a nondiscriminatory reason for the action taken, then the employee must demonstrate that the employer's stated reason was a pretext for impermissible discrimination. Id.
 {¶ 33} "To establish a claim of disability discrimination Plaintiffs must first establish that Mr. Vickers is disabled. R.C. 4112.01(A)(13) defines disability as a `physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of physical or mental impairment; or being regarded as having a physical or mental impairment.' R.C. 4112.01(A)(16)(a)(iii) lists cancer as a `physical or mental impairment.'
 {¶ 34} "Plaintiffs cite Johnson v. Metrohealth Med. Ctr., 8th Dist. No. 82506, 2004-Ohio-2864, arguing that because cancer qualifies as a physical or mental impairment, Plaintiffs are not required to show that Mr. Vickers' cancer substantially limits a major life activity. However, it is important to note that the authoring judge in Johnson stands alone on the conclusion that R.C. 4112.01(A)(13), which defines disability, `does not require all physical or mental impairments to substantially limit a major life activity before qualifying as disabilities * * *.'Johnson, at ¶ 11. The opinion reasoned that the `substantially limited' requirement in the definition of disability is derived from federal law, which no longer comports with the post-1992 Ohio definitional statute.Johnson, at ¶ 9. Therefore, Ohio courts cannot look to federal cases for guidance in this area. Id. The two other judges, concurring in judgment only, held that `[u]nder any of three prongs of the definition of "disability" set forth in R.C. 4112.01(A)(13), the plaintiff must demonstrate that the physical or mental impairment substantially affects a major life activity.' Johnson, at ¶ 47. See also Fitzmaurice v. GreatLakes Computer Corp., 155 Ohio App.3d 724, 2004-Ohio-235, 803 N.E.2d 854
(3-0 decision) (holding that even though multiple sclerosis is a listed physical impairment, plaintiff must still demonstrate that her impairment `substantially limits' one or more of her major life activities). They cite numerous cases stating that Ohio courts may seek guidance in the interpretation of the Ohio handicap discrimination law from regulations and cases that interpret the ADA. See Johnson, at ¶ 41. See alsoPattison v. Honda of America Mfg., Inc., 2nd Dist. No. 2003-CA-38, 2004-Ohio-3788, at ¶ 13, citing Columbus Civ. Serv. Comm. v. McGlone
(1998), 82 Ohio St.3d 569, 573, 1998-Ohio-410, 697 N.E.2d 204 (looking to federal law for guidance to determine whether a condition constitutes a disability). This Court is unpersuaded that precedence does not allow the Court to look to federal law for guidance in determining whether Mr. Vickers' cancer is a disability.
 {¶ 35} "The definition of disability requires that the impairment — real, recorded, or perceived — substantially limits a major life activity. Martin v. Barnesville Exempted Village School Dist. Bd. ofEdn. (S.D.Ohio 1999), 35 F.Supp.2d 1038, 1042, affirmed (C.A.6, 2000), 209 F.3d 931, certiorari denied (2000), 531 U.S. 992, 121 S.Ct. 482. The Code of Federal Regulations defines `substantially limits' as the following: `(I) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.'29 C.F.R. 1630.2(j)(1). `Factors considered in determining whether an impairment substantially limits a major life activity include: "(I) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."' 29 C.F.R. 1630.2(j)(2). The United States Supreme Court defined the phrase `substantially limits' even more narrowly in ToyotaMotor Mfg., Kentucky, Inc. v. Williams (2002), 534 U.S.184, 122 S.Ct. 681, by defining it as `an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.' See Pattison v. Honda of America Mfg., Inc., 2nd Dist. No. 2003-CA-38, 2004-Ohio-3788, at ¶ 19.
 {¶ 36} "Plaintiffs allege that Mr. Vickers' cancer substantially limited his major life activity of lifting. The only evidence of Mr. Vickers' inability to lift, is his statement that he was unable to `pick up a hundred pounds of steel like I used to be able to and carry it around.' (Vickers Depo. p. 31). Mr. Vickers also stated that ninety-five percent of his job was completed from his desk using his head and that the bench helpers did the heavy lifting. (Vickers Depo. p. 72). Lifting 100 pounds of steel is not of central importance to Mr. Vickers' job and more importantly, is not of central importance to most people's daily lives. Plaintiffs have failed to present sufficient evidence that Mr. Vickers' inability to lift and carry around 100 pounds of steel constitutes asignificant restriction on Mr. Vickers' ability to lift, work, or perform any other major life activity. Therefore, Plaintiffs have failed to prove that Mr. Vickers has a qualifying disability under the first definition of disability in 4112.01(A)(13).
 {¶ 37} "Plaintiffs allege, in the alternative, that Mr. Vickers was disabled under the third definition of disabled because Defendants perceived Mr. Vickers' cancer as substantially limiting his ability to perform the major life activity of working. Plaintiffs' only evidence is Mr. Vickers' own concern about how his employer perceived his work ability. Plaintiffs speculate that Defendants saw Mr. Vickers as a slow old man because he sat at his desk a lot and had his helpers do all the manual labor. Plaintiffs' speculation and conjecture are not sufficient evidence to establish that Defendants perceived Mr. Vickers as not being able to work. Because Plaintiffs are unable to prove Mr. Vickers has a qualifying disability under 4112.01(A)(13), Plaintiffs have failed to establish a prima facie case of disability discrimination. Defendants are entitled to summary judgment in their favor on Plaintiffs' claim for disability discrimination. "Even if Plaintiffs could have established a prima facie case, Plaintiffs, nevertheless, failed to demonstrate that the Defendants' proffered legitimate reasons for Mr. Vickers' termination were a pretext for disability discrimination. As previously stated, `a reason cannot be proved to be "a pretext for discrimination" unless it is shown both that the reason was false and that discrimination was the real reason.' St. Mary's Honor Ctr. v. Hicks (1993), 509 U.S. 502, 515-516,113 S.Ct. 2742. Similar to Plaintiffs' age discrimination claim, Plaintiffs fail to prove that discrimination was the real reason for Mr. Vickers' termination. Plaintiffs allege that `Defendants thought [Plaintiff] would need extensive medical treatment, which would impact [the company's] financial outlook negatively.' However, Plaintiffs fail to present any evidence to support this assertion. Defendants are entitled to summary judgment in their favor on Plaintiffs' claim for disability discrimination.
{¶ 38} "iii. Common Law Discrimination Discharge in Violation ofPublic Policy
 {¶ 39} "`Actions for employment discrimination, * * * did not exist at common law * * *.' Hoopes v. United Tel. Co. (1990), 50 Ohio St.3d 97, 100,553 N.E.2d 252. Plaintiffs cannot maintain a claim for common law discrimination. Therefore, Defendants are entitled to summary judgment in their favor on Plaintiffs' claim for common law discrimination.
 {¶ 40} "Ohio follows the rule that employment is terminable at the will of the employer, absent a reason contrary to law. Bidwell v. TheChildren's Med. Ctr. (Nov. 26, 1997), Montgomery App. No. 16402, citingMers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, 483 N.E.2d 150. Certain exceptions exist, including the existence of an implied contract of employment, promissory estoppel, and wrongful discharge in violation of public policy. Id. In order to establish a claim for tortious violation of public policy, Plaintiffs must prove the following four elements: 1) a clear public policy manifested in a state or federal constitution, statute or administrative regulation, or the common law; 2) that discharging the employee under circumstances like those involved would jeopardize the policy; 3) that the discharge at issue was motivated by conduct related to the policy; and 4) that there was no overriding business justification for the discharge. Hundley v. The Dayton Power Light Co., 148 Ohio App.3d 556, 559, 2002-Ohio-3566, 774 N.E.2d 330, quoting Painter v. Graley (1994), 70 Ohio St.3d 377, 1994-Ohio-334,639 N.E.2d 51, paragraph three of the syllabus. The first two elements are questions of law to be determined by the court, while the third and fourth are questions of fact to be determined by the jury. Id.
 {¶ 41} "Plaintiffs cite In re Wilkinson (Nov. 20, 1981), 4th Dist. No. 81CA3, to support their allegation that a public policy exists against discharging employees because they are sick. Plaintiffs simply misapply Wilkinson's holding. The court in Wilkinson held that as a matter of public policy enacted in Chapter 119 of the Revised Code and applied in the Ohio Administrative Code, a state employee whose illness lasts beyond his accumulated sick leave, will be given the opportunity to recover secure in the knowledge that he can return to his job. Even assuming this applies to non-civil service employees, the case sub judice does not present a situation where Mr. Vickers took sick leave. (Vickers Depo. p. 76-77). However, since Chapter 119 of the Revised Code does not apply to non-civil service employees, such as Mr. Vickers, Plaintiffs must set forth any statutes, code sections or common law identifying the existence of a clear public policy. Plaintiffs fail to do so. Even assuming that a clear public policy against discharging sick employees exists, the causation element requires a showing that Mr. Vickers' discharge was motivated by conduct related to the public policy. In the case sub judice, Mr. Vickers had finished all treatments and was working a normal schedule, even overtime, for five months before his termination. There is no evidence to support Plaintiffs' contention that Mr. Vickers was terminated because he was sick. Defendants are entitled to summary judgment in their favor on Plaintiffs' claim for discharge in violation of public policy.
{¶ 42} "iv. Breach of Implied Contract, Promissory Estoppel Equitable Estoppel
 {¶ 43} "Employment which is at-will is terminable at any time for any reason by either party. Calloway v. Miami Valley Regional Transit Auth.
(March 12, 1991), Montgomery App. No. 12296. `Although an implied contract or promissory estoppel may take a case out of the employment at will doctrine, * * * this does not hold true where there is an unambiguous written contract to the contrary.' Walker v. Univ. Med.Services, Montgomery App. No. 20141, 2004-Ohio-1321, at ¶ 18, quotingLane v. Terminal Freight Handling Co. (S.D.Ohio, 1991),775 F. Supp. 1101, 1105. The unambiguous conditions of a written employment agreement are controlling of any contrary oral promises concerning the same matters that either party made prior to executing the employment agreement. Id. at ¶ 22. An implied contract or promissory estoppel claim cannot lie where a subsequent unambiguous written agreement relieves the obligations imposed by prior oral promises. See Id. See also Baker v. Northwest Hauling, 6th Dist. No. WD-02-050, 2003-Ohio-3420, at ¶ 10 (holding that a signed employment application stating plaintiff `may be terminated at any time' is sufficient to render breach of contract and promissory estoppel claims invalid).
 {¶ 44} "Plaintiffs allege that two different oral statements made to Mr. Vickers in 1996 or 1997 converted his employment-at-will into a contractual agreement. First, while standing looking at a finished job, Plaintiffs allege that John Derr told Mr. Vickers `you don't ever have to worry * * * [a]s long as our doors are open, you've got a — you have got a job.' (Vickers Depo. p. 109). Second, Plaintiffs allege that in a conversation with Dave Whitehead, `[h]e asked me what my plans were for the future and I says just stay working. He says we would like for you to stay here and retire. And I said I would like to do that.' (Vickers Depo. p. 110). As a matter of law, neither of these statements, in the context of this case, are sufficient to constitute a claim for lifetime employment. However, even assuming these statements are adequate evidence of a specific promise of Mr. Vickers' continued employment, Plaintiffs' breach of contract and promissory estoppel claims cannot lie because of Mr. Vickers' conduct subsequent to these oral statements. On January 16, 2001, Mr. Vickers signed the `Associate Manual Receipt and Acknowledgment' form, which states: `I have entered into my employment relationship with Jena Tool voluntarily and acknowledge that there is no specified length of employment. Accordingly, either Jena Tool or I can terminate the relationship at will, with or without cause, at any time, so long as there is no violation of applicable federal or state law. Since the information, policies, and benefits described here are necessarily subject to change, I acknowledge that revisions to the manual may occur, except to Jena Tool's policy of employment-at-will.' This written agreement, into which Mr. Vickers freely and voluntarily entered, relieved Defendants of any alleged prior oral promises, and therefore, Defendants are entitled to summary judgment in their favor on Plaintiffs' claims of breach of contract and promissory estoppel.
 {¶ 45} "Since equitable estoppel is not a recognized exception to the employment-at-will doctrine, it is doubtful it can be used as such. Nevertheless, since implied contract and promissory estoppel cannot take a case out of the employment-at-will doctrine when Mr. Vickers signs an unambiguous agreement to the contrary, neither will equitable estoppel. Defendants are entitled to summary judgment in their favor on Plaintiffs' claim for equitable estoppel.
{¶ 46} "v. Negligent Misrepresentation
 {¶ 47} "The elements of negligent misrepresentation are as follows: `One, who in the course of his business profession or employment or in any other transaction in which he has a pecuniary interest supplies false information for the guidance of others in their business transactions is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information if he fails to exercise reasonable care or competence in obtaining or communicating the information.' Lynch v. EGG Mound Applied Technologies, Inc. (Jan. 29, 1999), Montgomery App. No. 17333, quoting Delman v. The City of ClevelandHeights (1989), 41 Ohio St.3d 1, 534 N.E.2d 835. See also Gutter v. DowJones, Inc. (1986), 22 Ohio St.3d 286, 490 N.E.2d 898; Haddon ViewInvest. Co. v. Coopers and Lybrand (1982), 70 Ohio St.2d 154,436 N.E.2d 212. No court in Ohio has held the tort of negligent misrepresentation applicable to the employer-employee relationship.Nichols v. Ryder Truck Rental, Inc. (June 23, 1994), 8th Dist. No. 65376. See also Lynch, supra.
 {¶ 48} "Plaintiffs base their negligent misrepresentation claim on their allegations that Defendants told Mr. Vickers he would have a job at Wren until he retired and as long as Defendant's doors are open. Since the tort of negligent misrepresentation does not apply to an employer-employee relationship, Defendants are entitled to summary judgment in their favor on Plaintiffs' claim for negligent misrepresentation. Even if negligent misrepresentation applies, Defendants are entitled to summary judgment in their favor because the execution of the at-will employment agreement after oral representations of continued employment negates any purported justifiable reliance on the oral statements.
 {¶ 49} "Plaintiffs also base their negligent misrepresentation claim on their allegation that Defendants told Mr. Vickers he could not maintain the life insurance policy, when in fact, the policy allowed an employee to `convert all or part of [his] group insurance to an individual life insurance.' However, ERISA preempts the state common law claim of negligent misrepresentation when the false statements concern the existence or extent of benefits under an employee benefit plan.Griggs v. E.I. Dupont De Nemours Co. (C.A.4, 2001), 237 F.3d 371,378. See also Muse v. Internatl. Business Machs. Corp. (C.A.6, 1996),103 F.3d 490, 493 (concluding that ERISA preempts the claim that plaintiff would have chosen to participate in the superior benefit plan had IBM not negligently or intentionally misrepresented to him that no further early retirement plans would be offered). Therefore, this Court does not have subject matter jurisdiction over Plaintiffs' claim for negligent misrepresentation regarding his life insurance plan, and Defendants are entitled to summary judgment in their favor on this claim.
{¶ 50} "vi. Breach of Fiduciary Relationship
 {¶ 51} "Plaintiffs' alleged seventh cause of action is breach of fiduciary duty. An obligor may be relieved of its fiduciary duty by the obligee who would benefit from its performance. Cruz v. S. DaytonUrological Assoc., Inc. (1997), 121 Ohio App.3d 655, 663,700 N.E.2d 675. In the case sub judice, Plaintiffs' claim for breach of fiduciary duty in regard to Mr. Vickers' termination fails as a matter of law because he signed an agreement stating his employment could be terminated without cause. Under the terms of this agreement, Defendants had no fiduciary duty with respect to the terms of Plaintiff's employment. Defendants are entitled to summary judgment in their favor on Plaintiffs' claim for breach of fiduciary duty regarding Mr. Vickers' termination.
 {¶ 52} "Plaintiffs also base their claim for breach of fiduciary duty on the alleged misrepresentation that Mr. Vickers could not maintain his life insurance policy. ERISA preempts state law claims of breach of fiduciary duty regarding employee benefit plans. Geiger v. UNUM LifeIns. Co. of America (N.D.Ohio 2002), 213 F.Supp.2d 813, 815, citingSmith v. Provident Bank (C.A.6, 1999), 170 F.3d 609, 613. Federal courts have exclusive jurisdiction over ERISA claims for breach of fiduciary duty. Richland Hosp., Inc. v. Ralyon (1987), 33 Ohio St.3d 87, 92,516 N.E.2d 1236. Therefore, this Court does not have jurisdiction to grant relief on Plaintiffs' claim for breach of fiduciary duty regarding the alleged misrepresentation concerning Mr. Vickers' life insurance policy, and Defendants are entitled to summary judgment in their favor on this claim.
{¶ 53} "vii. Breach of the Duty of Good Faith and Fair Dealing
 {¶ 54} "`Ohio law does not recognize the doctrine of good faith and fair dealing in employment contracts.' Edelman v. Franklin Iron MetalCorp. (1993), 87 Ohio App.3d 406, 410, 622 N.E.2d 411, citing Pylev. Ledex (1988), 49 Ohio App.3d 139, 551 N.E.2d 205. Therefore, Defendants are entitled to summary judgment in their favor on Plaintiffs' claim for breach of the duty of good faith and fair dealing regarding Mr. Vickers' termination.
 {¶ 55} "ERISA preempts state law claims of bad faith regarding employee benefit plans. Community Hospital v. Pierce (Oct. 19, 1994), 2nd Dist. No. 3105, citing Fugarino v. Hartford Life and Acc. Ins. Co.
(C.A.6, 1992), 969 F.2d 178. Therefore, this Court does not have jurisdiction to grant relief on Plaintiffs' claim for breach of the duty of good faith and fair dealing regarding the alleged misrepresentation concerning Mr. Vickers' life insurance policy, and Defendants are entitled to summary judgment in their favor on this claim.
{¶ 56} "viii. Negligent Infliction of Emotional Distress
 {¶ 57} "Ohio courts do not recognize a separate tort for negligent infliction of emotional distress in the employment context. Heck v. Bd.of Trustees, Kenyon College (S.D.Ohio, 1998), 12 F.Supp.2d 728, 747, citing Hanly v. Riverside Methodist Hosp. (1991), 78 Ohio App.3d 73,83; Tohline v. Central Trust Co. (1988), 48 Ohio App.3d 280; Antalisv. Ohio Dept. of Commerce (1990), 68 Ohio App.3d 650. Therefore, Defendants are entitled to summary judgment in their favor on Plaintiffs' claim for negligent infliction of emotional distress.
{¶ 58} "ix. Intentional Infliction of Emotional Distress
 {¶ 59} "`A former employee may not recover damages from his previous employer and supervisor for the intentional infliction of serious emotional distress allegedly caused by the employee's discharge from his at-will employment.' Foster v. McDevitt (1986), 31 Ohio App.3d 237,511 N.E.2d 403, at paragraph one of the syllabus. See also Bourekis v.Saidel Assocs. (June 2, 1994), Montgomery App. No. 14105 (holding that the termination of an at-will employee in itself cannot constitute the type of extreme, outrageous conduct necessary to establish a claim for intentional infliction of emotional distress); Breitenstein v. City ofMoraine (Nov. 5, 1992), Montgomery App. No. 13375 (holding that the mere fact that appellant was terminated from his employment, without more, cannot rise to the level of the type of extreme and outrageous conduct necessary to make out a claim for intentional infliction of emotional distress). For its holding, the Second District relied on Comment g to Section 46 of the Restatement which states: `The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress. * * *.' Id. at 239. This Court notes that although the Ohio Supreme Court held that `an action predicated upon intentional infliction of emotional distress brought by an at-will employee against his employer is not foreclosed merely because his discharge from employment was obtained in a lawful manner,' it based this holding on the fact that the proximate cause of the emotional distress suffered by the employee in that case was not limited to the mere fact of his discharge.Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 47-49, 570 N.E.2d 1076.
 {¶ 60} "In the case sub judice, Mr. Vickers was an at-will employee, and thus could be terminated with or without cause, at any time, as long as federal or state law was not violated. In deciding to terminate Mr. Vickers, Defendants have done no more than insist upon its legal rights. As explained throughout this decision, Plaintiffs have failed to demonstrate a genuine issue of fact as to whether Defendants' conduct was in excess of its privilege. Therefore, Defendants bear no liability to Mr. Vickers for any resultant emotional distress regardless of whether Defendants knew that the termination would cause Mr. Vickers emotional distress. Moreover, unlike Russ, the alleged harm suffered by Mr. Vickers is limited to that produced by his discharge. As a matter of law, Plaintiffs may not recover damages from Defendants for intentional infliction of emotional distress caused solely by Mr. Vickers' discharge from his at-will employment. Defendants are entitled to summary judgment in their favor on Plaintiffs' claim for intentional infliction of emotional distress.
{¶ 61} "x. Quantum Meruit
 {¶ 62} "`Quantum meruit is a doctrine derived from the natural law of equity, the basic concept of which is that no one should be unjustly enriched who benefits from the services of another.' Caras v. Green Green (June 28, 1996), Montgomery App. Nos. 14943, 15089, quoting Sonkin Melena Co. v. Zaransky (1992), 83 Ohio App.3d 169, 175,614 N.E.2d 807. In the case sub judice, Mr. Vickers admits that he was compensated for every hour he worked while employed. Because there is no unjust enrichment, Plaintiffs' claim for quantum meruit fails as a matter of law. Defendants are entitled to summary judgment in their favor on Plaintiffs' claim for quantum meruit.
{¶ 63} "xi. Loss of Consortium and Punitive Damages
 {¶ 64} "A claim for loss of consortium is a derivative action.Tomlinson v. Skolnik (1989), 44 Ohio St.3d 11, 15, 540 N.E.2d 716. Derivative actions do not exist but for the primary action. Id. In the case sub judice, summary judgment is granted on all the primary action claims. Therefore, Plaintiffs cannot establish a derivative claim for loss of consortium. Defendants are entitled to summary judgment in their favor on Plaintiffs' claim for loss of consortium.
 {¶ 65} "Plaintiffs' punitive damages claim is also a derivative action. Because Plaintiffs have not established a primary claim for relief, Plaintiffs' claim for punitive damages fails as a matter of law. Defendants are entitled to summary judgment in their favor on Plaintiffs' claim for punitive damages.
{¶ 66} "Conclusion
 {¶ 67} "For the reasons detailed herein, the Court hereby Overrules
Plaintiffs' Motion for Partial Summary Judgment, the Court Sustains
Defendants Wren Industries, David Whitehead, Ron Barr, and William Steele's Motion for Summary Judgment on all claims, and the CourtSustains Defendant John Roellig's Motion for Summary Judgment on all claims."
 {¶ 68} Appellate review of a decision by a trial court granting summary judgment is de novo. Citations omitted. We have reviewed the entire record in this case and we find that the trial court's decision granting summary judgment is more than supported by the facts of the matter and the applicable law. We hereby approve the trial court's decision and adopt it as our own.
 {¶ 69} The assignments of error are overruled and the judgment is Affirmed.
FAIN, J., concurs in the judgment.