HUNDLEY, Appellant,

v.

DAYTON POWER & LIGHT COMPANY et al., Appellees.

[Cite as *Hundley v. Dayton Power & Light Co.,* 148 Ohio App.3d 556, 2002-Ohio-3566.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19195.

Decided July 12, 2002.

Sheila M. Smith and Randolph H. Freking, for appellant.

Charles J. Faruki and Paul L. Horstman, for appellees.

WOLFF, Presiding Judge.

{¶ 1}  B. Douglas Hundley appeals from a decision of the Montgomery County Court of Common Pleas, which granted a motion for summary judgment and a motion for judgment on the pleadings in favor of Dayton Power and Light Company ("DP&L") and MVE, Inc. ("MVE").

{¶ 2}  Hundley was hired in March 2000, by MVE, a subsidiary of DP&L. Hundley executed an employment agreement with DP&L; however, the parties all agree that Hundley was an at-will employee.  On July 28, 2000, Hundley's wife and two children were involved in a serious car accident for which they were hospitalized.  Hundley's wife spent two months in the hospital following the accident, and his children were sent home to recover after three days in the hospital.  Hundley missed several weeks of work following the accident and

eventually informed his supervisor at MVE, Caroline Muhlencamp, that he needed two months of leave to care for his family. Shortly after Hundley's request, in August 2000, his employment was terminated, the stated reason being that MVE could not keep Hundley's job open for two months. However, Hundley was never replaced, and his duties were absorbed by Muhlencamp.

{¶ 3} On March 21, 2001, Hundley filed a complaint against DP&L and MVE. He made claims of wrongful termination in violation of public policy, promissory estoppel, and breach of the covenant of good faith and fair dealing. He also requested that he be awarded punitive damages and attorney fees. DP&L and MVE filed a motion for judgment on the pleadings on May 4, 2001, with respect to the claim for violation of the covenant of good faith and fair dealing and with respect to Hundley's request for punitive damages and attorney fees. That motion was granted by the trial court on June 25, 2001. On June 28, 2001, DP&L and MVE filed a motion for summary judgment with respect to the remaining two claims, promissory estoppel and wrongful termination in violation of public policy. Hundley conceded that summary judgment was appropriate on the promissory estoppel claim and does not argue it on appeal. The trial court granted the motion for summary judgment on January 23, 2002.

{¶ 4} Hundley appeals, raising four assignments of error.

{¶ 5} "I. The trial court erred in granting defendants-appellees' motion for summary judgment on plaintiff-appellant's wrongful discharge in violation of Ohio's public policy claim (count I)."

{¶ 6} Hundley argues that the trial court erred in granting summary judgment in favor of DP&L and MVE on his claim of wrongful discharge in violation of public policy. The public policy that Hundley would have us recognize is that employers must not discharge employees for requesting leave to care for seriously injured family members.

{¶ 7} Our review of the trial court's decision to grant summary judgment is de novo. See *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65–66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 8}   Ohio adheres to the doctrine of employment at will, which refers to the traditional rule that "a general or indefinite hiring is terminable at the will of either party, for any cause, no cause or even in gross or reckless disregard of any employee's rights." *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 67, 652 N.E.2d 653.   However, the Supreme Court has recognized several exceptions to the doctrine of employment at will.   See, e.g., *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150 (recognizing two exceptions to the doctrine:  implied contract and promissory estoppel).   In *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, syllabus, the Supreme Court first recognized a cause of action in Ohio for wrongful discharge in violation of public policy.   In *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus, the court stated:

{¶ 9}   " 'Clear public policy' sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law."

{¶ 10}   The elements for a claim of wrongful discharge in violation of public policy were first set forth in *Painter* :

{¶ 11}   "1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

{¶ 12}   "2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

{¶ 13}   "3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

{¶ 14}   "4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element)." (Emphasis sic.)   *Painter*, supra, at 384, fn. 8, 639 N.E.2d 51, citing Perritt, The Future of Wrongful Dismissal Claims:  Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398–99.

{¶ 15}   This framework was adopted by the Supreme Court in *Collins,* supra, 73 Ohio St.3d at 69–70, 652 N.E.2d 653.   The first two elements, the clarity and jeopardy elements, " 'both of which involve relatively pure law and policy questions,' are questions of law to be determined by the court."   Id. at 70, 652 N.E.2d 653.   The third and fourth elements are questions of fact to be determined by the jury.   See id.

{¶ 16} The trial court concluded that the clarity element was not met in this case. In doing so, it ruled that there was no clear public policy in Ohio prohibiting employers from terminating short-term employees who requested leave to care for seriously injured family members. Because it concluded that the first element had not been met, the court did not address any of the remaining three elements of the claim of wrongful discharge in violation of public policy. Therefore, we are concerned solely with the clarity element in this appeal.

{¶ 17} Hundley points to the federal Family and Medical Leave Act, Section 2601 et seq., Title 29, U.S.Code ("FMLA"), as the primary source of the public policy he seeks to have recognized. The FMLA was designed "to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." Section 2601(b)(2), Title 29, U.S.Code. Congress found that "it is important for the development of children and the family unit that fathers and mothers be able to participate in * * * the care of family members who have serious health conditions." Section 2601(a)(2), Title 29, U.S.Code. Furthermore, the FMLA was enacted "to balance the demands of the workplace with the needs of families." Section 2601(b)(1), Title 29, U.S.Code. Hundley concedes that he is not covered by the FMLA because he had not been employed by DP & L for at least twelve months. See Section 2611(2)(A), Title 29, U.S.Code. Hundley nevertheless argues that we should read the FMLA together with various Ohio statutes to support a public policy against terminating employees who request leave to care for seriously injured family members.

{¶ 18} In support of this argument, he points to the Supreme Court's decision in *Collins*, supra. In *Collins*, the Supreme Court considered whether there was a clear public policy against sexual harassment in employment. The court identified two sources of statutorily expressed public policy, each of which were "independently sufficient to allow for the recognition of a cause of action for wrongful discharge in violation of public policy." *Collins*, supra, 73 Ohio St.3d at 70, 652 N.E.2d 653.[1] The first were R.C. 2907.06, prohibiting sexual imposition, and R.C. 2907.21 through 2907.25, prohibiting prostitution and related crimes. See *Collins*, supra, at 70–71, 652 N.E.2d 653. The second was R.C. 4112.02, prohibiting discrimination in employment. Neither source specifically applied to the plaintiff in *Collins*. Id. at 72, 652 N.E.2d 653. The court noted that no actual crimes had been committed and that R.C. 4112.02 did not apply because the

---

1. See, also, *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 151, 677 N.E.2d 308 (noting that there exist two sources of public policy prohibiting discharge for reporting OSHA violations, both of which are "independently sufficient to justify an exception to the employment-at-will doctrine").

plaintiff's employer had had fewer than four employees. See R.C. 4112.01(A)(2). However, the court found the public policy behind these statutes to be broader than their specific application and from these statutes concluded that there was a clear public policy in Ohio against terminating employees for resisting sexual harassment. See *Collins,* supra, at 70–72, 652 N.E.2d 653. Based on this decision, Hundley argues that the FMLA should be read in concert with several Ohio statutes to support a public policy against discharging an employee for requesting leave to care for an injured relative.

{¶ 19} The Ohio statutes to which Hundley refers include statutes providing sick leave policies for state employees, which allow that leave may be used to care for ill relatives. See R.C. 124.38 (providing that employees of various county, municipal, and township offices, state universities, and boards of education may use sick leave for absence due to illness, injury, or death in the employee's immediate family); R.C. 1515.091 (providing for a voluntary sick leave donation program for employees of soil and water conservation districts to cover approved unpaid leave used to care for an ill relative); and R.C. 3319.141 (providing that employees of boards of education may use sick leave for absence due to illness, injury, or death in the employee's immediate family). Hundley also refers to statutes governing the parent-child relationship. See R.C. 2111.08 (stating that a wife and husband are equally charged with caring for their minor children and each other); R.C. 3103.03 (stating that parents have a duty to support their minor children); and R.C. 2919.21 (providing a criminal penalty for people who abandon or fail to support their minor children). Based upon these statutes and the FMLA, Hundley argues that there is a clear public policy in Ohio that employees should not be penalized for using sick leave to care for injured relatives and that parents have a legal duty to care for seriously injured children.

{¶ 20} Initially, we will consider whether the FMLA supports the public policy argued by Hundley. Hundley points to decisions from the Northern and Southern Districts of Ohio, stating that an employee may maintain a cause of action under Ohio law for wrongful discharge in violation of public policy based on a violation of the FMLA. See *Arthur v. Armco, Inc.* (S.D.Ohio 2000), 122 F.Supp.2d 876, 880; *Maxwell v. GTE Wireless Serv. Corp.* (N.D.Ohio 2000), 121 F.Supp.2d 649, 660. Those cases stated generally that the FMLA embodies a clear public policy against terminating employees for requesting leave to care for sick relatives. However, those courts did not discuss the issue before us, whether that policy only applied to employees who had been employed for at least a year, because the plaintiffs in those cases met the technical requirements of the FMLA. However, the Sixth Circuit Court of Appeals has held that the public policy of the FMLA is to protect long-term employees who have been employed for at least a year from being terminated for requesting leave to care for a sick

relative and that a broader policy cannot be ascertained from the statute. See *Dorricott v. Fairhill Ctr. for Aging* (C.A.6, July 27, 1999), No. 98–3671, 1999 WL 591453. Hundley argues that *Dorricott* is not dispositive because he can point to other sources of the public policy he asks us to recognize, whereas, in *Dorricott*, the plaintiff relied solely on the FMLA. As noted above, he also seeks to circumvent the eligibility requirements of the FMLA in this manner.

{¶ 21} In *Collins*, the Supreme Court stated: "We do not mean to suggest that where a statute's coverage provisions form an essential part of its public policy, we may extract a policy from the statute and use it to nullify the statute's own coverage provisions." 73 Ohio St.3d at 74, 652 N.E.2d 653. With regard to the FMLA, we believe that the requirement that an employee have been employed for at least a year does "form an essential part of its public policy." Thus, we agree with the Sixth Circuit Court of Appeals that the public policy behind the FMLA is to protect long-term employees from being terminated for requesting leave to care for a sick relative. See *Dorricott*, supra. In doing so, we are persuaded by the distinctions between the FMLA and the public policy against sexual harassment. The FMLA clearly states that it is designed to "balance the demands of the workplace with the needs of families." Section 2601(b)(1), Title 29, U.S.Code. The one-year requirement in that statute is part of the effort to balance the needs of employers against the needs of families, and the policy behind the FMLA does not require employers to grant leave to employees who have not been employed for a year or longer. Whereas in *Collins* it would have been ludicrous to suggest that the public policy of Ohio supported sexual harassment by employers with fewer than four employees, the public policy of the FMLA reflects more of a balance between the interests of employers and employees. The FMLA seeks to accomplish the above-stated purpose "in a manner that accommodates the legitimate interests of employers." Section 2601(b)(3), Title 29, U.S.Code. Thus, we conclude that the one-year requirement of the FMLA forms an essential part of its public policy.

{¶ 22} Furthermore, the Ohio statutes cited by Hundley do not support a public policy against terminating employees for requesting leave to care for injured relatives. The statutes regarding sick leave for state employees set forth employment policies by the state of Ohio as an employer rather than a public policy. Furthermore, at best, they embody a public policy to allow employees to use their sick leave to care for an injured relative. Hundley has not alleged that he was not permitted to use sick leave to care for his family.

{¶ 23} The statutes dealing with the parental duty to support children likewise do not embody the public policy Hundley seeks to have us recognize. While they might embody a public policy requiring parents to support their children, they do not embody a public policy against terminating employees who

request leave to care for injured family members. In reviewing similar situations, courts in other jurisdictions have found no public policy against terminating employees. In *Upton v. JWP Businessland* (1997), 425 Mass. 756, 759–760, 682 N.E.2d 1357, the court reviewed an employee's claim that her employer's requirement that she work long hours would require her to neglect her child and stated that "[t]here is no public policy which mandates that an employer must adjust its expectations, based on a case-by-case analysis of an at-will employee's domestic circumstances, or face liability for having discharged the employee." In *Lloyd v. AMF Bowling Ctrs., Inc.* (App.1999), 195 Ariz. 144, 147, 985 P.2d 629, the court reviewed an employee's claim that his discharge violated public policy because coming to work would have required him to leave his children unattended and stated that "[n]o public policy prohibits employers from calling at will employees and expecting them to appear at work, and then terminating them if they do not."

{¶ 24} In enacting the statutes relied upon by Hundley, the state and federal legislatures have set clear limits on their application. We are mindful of the Supreme Court's statement in *Painter* that "[j]udicial policy preferences may not be used to override valid legislative enactments, for the General Assembly should be the final arbiter of public policy." 70 Ohio St.3d at 385, 639 N.E.2d 51, quoting *State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672. Therefore, we will not expand upon the public policy contained in the statutes Hundley cites. While the state may have a policy of granting its employees the use of sick leave to care for relatives, the legislature has not created a public policy favoring such treatment for all employees. Likewise, the FMLA, while mandating that employees with a tenure of a year or more be granted leave to care for relatives, specifically does not apply to employees of less than a year. If we were to recognize the public policy Hundley sets forth, we would in effect be creating legislation, which is not the function of this court.

{¶ 25} We therefore conclude that there is not a clear public policy in Ohio against terminating an employee for requesting leave to care for injured relatives. Accordingly, the first element of a claim for wrongful discharge in violation of public policy was not met, and the trial court did not err in granting summary judgment in favor of DP&L and MVE.

{¶ 26} The first assignment of error is overruled.

{¶ 27} "II. The trial court erred in granting the defendant-appellees' motion for judgment on the pleadings regarding plaintiff-appellant's breach of covenant of good faith and fair dealing claim (count III)."

[5] {¶ 28} Under this assignment of error, Hundley urges us to recognize a cause of action for breach of the covenant of good faith and fair dealing in

employment-at-will agreements. As Hundley concedes, Ohio has rejected such a cause of action. See *Mers*, supra, 19 Ohio St.3d at 105, 19 OBR 261, 483 N.E.2d 150, citing *Fawcett v. G.C. Murphy & Co.* (1976), 46 Ohio St.2d 245, 249, 75 O.O.2d 291, 348 N.E.2d 144. However, Hundley contends that we should nevertheless recognize such a cause of action given the number of states that have done so. We do not know if Hundley is correct in asserting that the Supreme Court is on the cusp of recognizing a cause of action for breach of the covenant of good faith and fair dealing. However, until such time as the court does so, we are required to follow existing precedent. Thus, we decline to recognize such a cause of action.

{¶ 29} The second assignment of error is overruled.

{¶ 30} "III. The trial court erred in granting defendants-appellees' motion for judgment on the pleadings regarding plaintiff-appellant's demand for punitive damages.

{¶ 31} "IV. The trial court erred in granting defendants-appellees' motion for judgment on the pleadings regarding plaintiff-appellant's demand for attorney's fees."

{¶ 32} The third and fourth assignments of error are rendered moot by our disposition of the first and second assignments of error and are therefore overruled.

{¶ 33} The judgment of the trial court will be affirmed.

Judgment affirmed.

BROGAN and FREDERICK N. YOUNG, JJ., concur.