834 A.2d 1077 (2003)
364 N.J. Super. 194
Regina T. HAMPTON, Plaintiff-Appellant,
v.
ARMAND CORPORATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 2003.
Decided November 18, 2003.
*1078 Louis R. Lessig, Westmont, argued the cause for appellant (Brown & Connery, attorneys; William M. Tambussi and Louis R. Lessig, on the brief). *1079 Jason K. Cohen, Philadelphia, PA, argued the cause for respondent (Stradley, Ronon, Stevens & Young, attorneys; Francis X. Manning, Cherry Hill and Jason K. Cohen, on the brief).
Before Judges CUFF, AXELRAD and WINKELSTEIN.[1]
The opinion of the court was delivered by WINKELSTEIN, J.A.D.
Plaintiff Regina Hampton filed a complaint in this employment law case claiming her former employer, defendant Armand Corporation, wrongfully terminated her employment. She claims defendant retaliated against her for taking medical leave, thus violating the public policy which underlies the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C.A. §§ 2601 to 2654.
Plaintiff asserts that even though she did not have a viable claim under the FMLA because she was employed by defendant for less than twelve months, the FMLA nevertheless provides a clear mandate of public policy so as to support a wrongful discharge claim pursuant to Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 417 A.2d 505 (1980). The novel question presented is whether the FMLA establishes a public policy of protecting employees whose employment has lasted less than one year against discharge for taking time off for medical reasons. In dismissing plaintiff's complaint, Judge Freeman concluded that because plaintiff was not entitled to protection under the FMLA by reason of the fact that she was employed by defendant for less than twelve months, see 29 U.S.C.A. § 2611(2)(A)(i), she could not utilize the FMLA as a source of public policy to support a wrongful discharge claim. We agree and affirm.
Because plaintiff's complaint was dismissed on summary judgment, we view the facts in a light most favorable to her. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
Defendant hired plaintiff on March 16, 1998, to serve as the executive assistant to defendant's president, Barbara Armand (Armand). Plaintiff was an at-will employee. Her duties included answering and screening phone calls, making Armand's appointments, filing, and typing correspondence and other documents. While plaintiff claims she performed all of her duties in a professional and competent manner, Armand asserts that plaintiff had difficulty with typing tasks.
On November 30, 1998, Armand sent plaintiff an interoffice memorandum in which she complained that plaintiff was unable to work a forty-hour week, and suggested that plaintiff schedule her doctors' appointments for the evenings, after work. Armand also criticized plaintiff for discrepancies on her timesheets. Armand threatened that "another incident of a similar nature [would] result in [plaintiff's] immediate termination." Plaintiff signed and dated the letter on December 1, 1998, on a line directly under a statement that said, "[p]lease sign below that you have read the above statements and understand that you will be terminated if this conduct continues."
According to Armand's deposition testimony, on December 17, 1998, plaintiff told her that she was going to have gallbladder surgery the next day and would need time off. What she understood from the conversation was that plaintiff would return to *1080 work either the afternoon of the surgery or the following day. Conversely, plaintiff testified that on December 11, 1998, the day after she learned she would need surgery, she told Armand that after the surgery she would be out of work for six weeks.
When plaintiff returned to work on January 11, 1999, Armand told her that she had been demoted. Armand "tells me that she's demoting me because I haven't been there, I'm not reliable, she's going to give Angela [Ashley, defendant's office manager] my job effective that day...." Armand told plaintiff that she was switching plaintiff's position with Ashley's, who had started serving as Armand's executive assistant about a week after plaintiff left for surgery. Plaintiff's salary did not change as a result of the demotion.
Soon after plaintiff took over the officer manager position, most of her job duties were eliminated or given to others. She took additional time off from January 21, 1999 to January 28, 1999, because she was sick again as a result of her gallbladder surgery. On February 25, 1999, plaintiff was discharged. She claims she was fired because she missed work due to her illness and surgery. Armand claims plaintiff was terminated, along with other employees, because the business was having financial difficulties.
After being terminated, plaintiff filed suit against defendant in state court, alleging she was wrongfully discharged in retaliation for taking medical leave. Armand filed a notice of removal to the United States District Court, where Judge Simandle dismissed plaintiff's FMLA claim because she had not been an employee of defendant for one year prior to her termination. See 29 U.S.C.A. § 2611(2)(A)(i). The judge also remanded the case to state court to resolve plaintiff's remaining state law claim, that she was terminated in violation of public policy.
New Jersey recognizes a claim for wrongful termination of an at-will employee when the discharge is contrary to a clear mandate of public policy. See Pierce, supra, 84 N.J. at 72, 417 A.2d 505. An employee can prove a wrongful discharge claim by "show[ing] that the retaliation is based on the employee's exercise of certain established rights, violating a clear mandate of public policy." MacDougall v. Weichert, 144 N.J. 380, 393, 677 A.2d 162 (1996). Sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions. Pierce, supra, 84 N.J. at 72, 417 A.2d 505. Whether a plaintiff has established the existence of a clear mandate of public policy is an issue of law. Mehlman v. Mobil Oil Corp., 153 N.J. 163, 187, 707 A.2d 1000 (1998). "A salutary limiting principle is that the offensive activity must pose a threat of public harm, not merely private harm or harm only to the aggrieved employee." Id. at 188, 707 A.2d 1000. The public policy must be "clearly identified and firmly grounded.... A vague, controversial, unsettled, and otherwise problematic public policy does not constitute a clear mandate." MacDougall, supra, 144 N.J. at 391-92, 677 A.2d 162. Unless an employee at-will identifies a clear, specific expression of public policy, that employee may be discharged with or without cause. Pierce, supra, 84 N.J. at 72, 417 A.2d 505.
Here, plaintiff claims the FMLA establishes the public policy needed to support her cause of action. She argues that the FMLA prohibits an employer from discharging an employee for taking medical leave, which is what defendant did to her. Plaintiff claims she was retaliated against for taking medical leave, and was demoted and ultimately fired. Consequently, she asserts that Judge Freeman erred when *1081 he dismissed her complaint for want of a public policy violation. What plaintiff's position fails to consider, however, is that the policy expressed by the FMLAthat an employee is entitled to reasonable medical leaveapplies only to "eligible employees," those who have worked for the employer for at least twelve months. See 29 U.S.C.A. § 2611(2)(A)(i).
For an employer to terminate an "eligible employee" for taking reasonable medical leave is a violation of the FMLA. See 29 U.S.C.A. § 2601(2); 29 U.S.C.A. § 2615(a)(2). An "eligible employee" under the FMLA is "entitled to a total of 12 workweeks of leave during any 12-month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612(a)(1)(D).
In enacting the FMLA, Congress "intended that workers should be able to return to their jobs after leave for a serious health condition." Lau v. Behr Heat Transfer Sys., Inc., 150 F.Supp.2d 1017, 1023 (D.S.D.2001). This Congressional goal was tempered, however, by the needs of the employer. Among the FMLA's stated purposes are, "to accomplish the purposes [of the Act] ... in a manner that accommodates the legitimate interests of employers," 29 U.S.C.A. § 2601(b)(3), and "to balance the demands of the workplace with the needs of families...." 29 U.S.C.A. § 2601(b)(1). Congress helped achieve this balance by limiting claims under the FMLA to employees who have worked for the same employer for "at least 12 months...." 29 U.S.C.A. § 2611(2)(A)(i); see also Hundley v. Dayton Power & Light Co., 148 Ohio App.3d 556, 774 N.E.2d 330, 335 (2002). "[T]he policy behind the FMLA does not require employers to grant leave to employees who have not been employed for a year or longer." Ibid. The one-year limitation of the FMLA, representing an accommodation to employers, therefore helps shape the public policy underlying the legislation. See Coleman v. Prudential Relocation, 975 F.Supp. 234, 245 (W.D.N.Y.1997) (only eligible employee can engage in protected activity); 29 C.F.R. § 825.101 (enactment of FMLA predicated upon needs of workers and "development of high-performance organizations").
The FMLA establishes a clear mandate of public policy for "eligible employees" wrongfully terminated pursuant to its provisions. That such a public policy exists, however, does not translate to a public policy that protects short-term employees. Under plaintiff's theory, an employee who has been barred from filing a direct FMLA claim because the employee has been working for less than twelve months could indirectly achieve the same result by filing a Pierce claim based on the FMLA's public policy. Such a result would undermine the balance Congress sought to achieve in enacting the twelve-month limitation. We are obliged to recognize and respect this clearly expressed legislative design.
We briefly address two additional issues raised by plaintiff. Plaintiff argues that notwithstanding the FMLA, New Jersey's broad public policy protects employees from being terminated for taking sick leave, no matter how long they have been employed. To support this contention, plaintiff points to the policy against terminating an employee who makes a worker's compensation claim, Lally v. Copygraphics, 85 N.J. 668, 669, 428 A.2d 1317 (1981); against terminating an employee for reporting an unsafe workplace condition, Lepore v. National Tool Mfg. Co., 224 N.J.Super. 463, 466, 540 A.2d 1296, aff'd, 115 N.J. 226, 557 A.2d 1371 (1989); and the general goal to "fight to eradicate the *1082 cancer of unlawful discrimination of all types from our society," Andersen v. Exxon Co., 89 N.J. 483, 492, 446 A.2d 486 (1982). These well-settled objectives, however, do not reflect a public policy in this state against terminating an employee for taking sick leave. They represent a policy of protecting employees against retaliatory and discriminatory conduct in specific situations. But, they do not support plaintiff's argument that New Jersey's broad public policy protects employees for being terminated for taking sick leave. See MacDougall, supra, 144 N.J. at 391-92, 677 A.2d 162; Pierce, supra, 84 N.J. at 72, 417 A.2d 505.
Notably, New Jersey has enacted the Family Leave Act, N.J.S.A. 34:11B-1 to -16, which permits an employee (who has been employed for twelve months) to take leave for the "birth or placement for adoption of a child or serious health condition of a family member," N.J.S.A. 34:11B-2, but does not provide an employee leave for his own illness. The State Legislature has not expressed a public policy that protects an employee, no matter how long employed, from being discharged for taking medical leave for his or her own illness. Nor is there any judicial precedent to support plaintiff's position. Compare Moreau v. Air France, 343 F.3d 1179, 1191 (9th Cir.2003) (California law does not provide common law remedy for a person not entitled to relief under FMLA).
Finally, plaintiff claims defendant engaged in a "pattern and practice" of discharging or forcing the resignation of employees who sought medical leave, such as plaintiff, before they became eligible for the protection afforded by the FMLA. Yet, plaintiff points to no facts to support her claim. Her unsubstantiated allegations are without sufficient merit to warrant a more complete discussion in this opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] Judge Cuff did not participate in oral argument. However, she did listen to the tape recording of the proceeding and the parties have consented to her participation in this opinion.