Leesa J. CAPILLI, Appellant

v.

**WHITESELL CONSTRUCTION COMPANY.**

No. 07–1637.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 4, 2008.

Filed April 1, 2008.

---

Ellen M. McDowell, McDowell Riga, Maple Shade, NJ, for Appellant.

Edward N. Yost, Rinker, Biddle & Reath, Philadelphia, PA, Thomas J. Barton, Drinker, Biddle & Reath, Princeton, NJ, for Whitesell Construction Company.

Before: BARRY, HARDIMAN, and JORDAN, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Leesa J. Capilli appeals from orders of the District Court granting summary judgment and judgment as a matter of law in favor of her former employer in her lawsuit for various violations of the Family and Medical Leave Act ("FMLA") and New Jersey common law. We will affirm.

### I.  Background

Capilli began working as a mechanical designer for Whitesell Construction Company ("Whitesell") in 2001. Whitesell never provided Capilli with a copy of employee rights under the FMLA, although that information was posted on a public bulletin board at her workplace and she read it several times.

In October 2001, after five months of employment, Capilli's supervisor, Bruce Schlegel, met with her to discuss problems with her work performance, her relationships with her co-workers and clients, her tendency to leave work early, and her excessive absenteeism. Schlegel recorded his concerns in a memo which he placed in Capilli's personnel file.

During February and March 2002, Capilli suffered from bronchitis, which required her to miss two days of work. Af-

ter seeing a pulmonary specialist, Capilli discovered that she had a spot of deteriorated tissue on her lung called a "bleb." She also had a second spot on her lung which required monitoring. Capilli told Schlegel and some of her other co-workers about her condition.

On May 30, 2003, Schlegel documented additional problems with Capilli's work performance. These included an unexplained absence on the same day as an important meeting, and various computer mishaps which corrupted an important file and her workplace email account. According to Schlegel's memo, Capilli responded with "emotional outbursts" when one of Whitesell's employees attempted to fix the problems with her email. Schlegel's memo also referred to other unspecified outbursts and mistakes.

On July 31, 2003, Capilli sent Schlegel an email telling him that she intended to leave work early the next day to participate in a blood drive and pick up her niece and nephew. Schlegel responded with an email telling her not to send him similar emails in the future, and to "get [her] butt out of the chair" and come speak to him if she wanted to leave early. (Appendix "App." at 668.)

During the last week of September 2003, Capilli had trouble breathing and took two days off work. She was hospitalized later that week. After her release, she contacted Schlegel and told him that she would have to take time off to recuperate and undergo medical tests. Schlegel told her to "take whatever time you need." (App. at 236.) Capilli did not return to work for twenty-three days.

Capilli returned to work on October 23, 2003. On October 28, she made a loud personal phone call in which she called her doctor an "idiot," which prompted another coworker, Susan Hikade, to complain that she had disturbed a meeting with a client. Hikade told Schlegel about the disruption,

and he asked her to write a memo to him describing Capilli's actions. She did so, and Schlegel placed the memo in Capilli's personnel file. The memo also included an account of a conversation Hikade had with Capilli in which Capilli angrily berated the company. Around this same time, Capilli alleges that she discovered a new floor plan for Whitesell's offices which did not include a place for her to sit. This led her to believe that she would soon be fired.

On November 19, 2003, Capilli was involved in an argument with three of her coworkers. Although accounts of the reason for the confrontation differ, Capilli alleges that Dick Wendworth, one of the three co-workers present, allegedly told her that she should seek employment elsewhere. Capilli then emailed Joan Chiaccio, Whitesell's director of Human Resources, and told her that she was considering filing harassment charges against Wendworth if he made "any future threatening comments" to her. (App. at 672.) Chiaccio forwarded Capilli's email to Tom Heitzman, Whitesell's Vice President.

Based on Capilli's email to Chiaccio, Heitzman decided to separately interview each of the three individuals involved in the argument with Capilli. Also on November 19, Capilli received a call from her doctor informing her that she had a tumor in her throat and that she would need to schedule a biopsy.

On November 20, 2003, Capilli told Schlegel that she would need additional time off, and he told her to "do what you have to do." (App. at 192.) Later that same day, Heitzman met with Schlegel to discuss Capilli's dispute with her co-workers. Schlegel did not inform Heitzman of Capilli's need for additional sick leave. However, he did tell him about Capilli's argument with Susan Hikade. Heitzman then met with Hikade and concluded that Capilli should be fired because she did not

get along with her co-workers. That evening, Heitzman met with Whitesell's President, Robert Richards, and recommended firing Capilli. After reviewing Capilli's personnel file and speaking with Schlegel, Richards fired Capilli the following day. Capilli acknowledged that Richards knew nothing of her need for time off for surgery when he made the decision to terminate her employment with Whitesell.

After her termination, Capilli filed suit against Whitesell. She claimed that Whitesell interfered with her ability to exercise her FMLA rights by failing to inform her of her rights, and that she was prejudiced by this interference because she would not have returned to work when she did had she known that she was entitled to FMLA leave. She further claimed that Whitesell violated the FMLA by terminating her for taking a three-week medical leave and for requesting additional leave. She also claimed that Whitesell discriminated against her because of a disability in violation of the Americans with Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD"). Finally, she asserted that Whitesell wrongfully discharged her in violation of her rights under New Jersey common law.

Prior to trial, the District Court granted Whitesell's motion for summary judgment on Capilli's FMLA interference claim, her ADA claim, and her NJLAD claim. The District Court also granted summary judg-

ment for Whitesell on Capilli's claim under New Jersey common law, concluding that this claim was preempted by her claims under the NJLAD. A trial was then held on Capilli's remaining FMLA retaliation claim. At the close of all the evidence, the District Court granted Whitesell's motion under Federal Rule of Civil Procedure 50 for judgment as a matter of law. In doing so, the District Court concluded that Capilli had failed to make out a *prima facie* case of unlawful retaliation, or, in the alternative, had failed to show that Whitesell's proffered reason for firing her was pretextual.

Capilli filed a timely appeal contesting both the District Court's grant of summary judgment on her claim that Whitesell interfered with her FMLA rights and her claim under New Jersey common law, as well as the District Court's grant of judgment as a matter of law on her FMLA retaliation claim.[1]

## II. Discussion

### A. Capilli's FMLA Retaliation Claim

■ Under the FMLA, employees are entitled to a maximum of twelve weeks of leave per year to address "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer may not retaliate against an employee who requests

---

1. We have jurisdiction under 28 U.S.C. § 1291. Our review of a district court's grant of summary judgment is plenary. *Weldon v. Kraft*, 896 F.2d 793, 797 (3d Cir.1990). In conducting our review, we must construe all the facts in the light most favorable to the non-moving party. *Id.* Summary judgment is appropriate only if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We also exercise plenary review over a district court's decision to grant judgment as a matter of law. *Carswell v.*

*Borough of Homestead*, 381 F.3d 235, 240 (3d Cir.2004).

Judgment as a matter of law is appropriate if, under the governing law, there is but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As in summary judgment, we must draw all reasonable inferences in favor of the non-movant. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

or uses FMLA leave. *Id.* at § 2615(a)(2); 29 C.F.R. § 825.220(c). On appeal, Capilli argues that Whitesell fired her in retaliation for her decision to take three weeks of medical leave and for requesting additional medical leave to have the tumor in her throat biopsied.

Our analysis of Capilli's retaliation claim follows the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To prove retaliation in violation of the FMLA, Capilli bears the burden to make out a *prima facie* case showing "that (1)[s]he took an FMLA leave, (2)[s]he suffered an adverse employment decision, and (3) the adverse decision was causally related to [her] leave." *Conoshenti v. Public Svc. Elec. & Gas Co.,* 364 F.3d 135, 146 (3d Cir.2004). If Capilli succeeds in making out her *prima facie* case, then "the burden[2] shifts to [Whitesell] 'to articulate some legitimate, nondiscriminatory reason for [Capilli's termination.]' ... [S]hould [Whitesell] carry this burden, [Capilli] must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by [Whitesell] were not its true reasons, but were a pretext for discrimination." *Marzano v. Computer Science Corp. Inc.,* 91 F.3d 497, 503 (3d Cir.1996) (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

We conclude that Capilli's FMLA retaliation claim fails because, even assuming that she had made out her *prima facie* case, we agree with the District Court that Whitesell met its burden to articulate nondiscriminatory reasons for her termination. Furthermore, the evidence, even when viewed in the light most favorable to Capilli, demonstrates that these reasons were not pretextual.

The record contains numerous instances of Capilli's problems interacting with her co-workers. Schlegel's 2001 memo noted Capilli's "apparent negative attitude" and that there was "a less than cooperative reaction from her when she is given direction." (App. at 79.) The same memo recounts that Capilli had been "overheard to make comments that could be misconstrued to put her and Whitesell in a bad light." (App. At 79–80.) Similarly, Schlegel's 2003 memo recounts that Capilli responded with "emotional outbursts" when questioned about problems with her work email account. (App. at 669.) Capilli also admitted at trial that her phone call about her doctor was loud enough to prompt Susan Hikade to complain. Finally, Schlegel offered uncontradicted testimony that various members of his staff refused to work with Capilli because they did not get along with her. Even viewing all of this evidence in the light most favorable to Capilli, this history of problems with her co-workers is sufficient to satisfy Whitesell's burden of putting forth non-discriminatory reasons for Capilli's termination. The burden therefore shifts to Capilli to demonstrate that the reasons Whitesell has advanced for her termination are pretextual.

We have explained that showing pretext "places a difficult burden on the plaintiff." *Kautz v. Met–Pro Corp.,* 412 F.3d 463, 467 (3d Cir.2005) (citing *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir.1994)). To succeed in showing pretext, it is not enough for Capilli to show that Whitesell's decision to terminate her was "wrong or mistaken,

**2.** I n referring to the shifting burdens under the *McDonnell Douglas* analysis, we have explained that while the burden of production shifts during the analysis, the burden of persuasion remains at all times with the plaintiff. *Marra v. Philadelphia Housing Auth.,* 497 F.3d 286, 300–01 & n. 11 (3d Cir.2007) (citations omitted).

since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* (citation omitted). Thus, Capilli must show that the reasons given by Whitesell contain "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions ... that a reasonable fact finder could rationally find them unworthy of credence." *Id.*

In her brief, rather than contest the substance of her disputes with her co-workers, Capilli argues that these disputes were minor and therefore pretextual.[3] She further argues that the close temporal proximity between her three-week medical leave, her request to Schlegel for additional leave, and Whitesell's decision to fire her would allow a reasonable jury to find that Whitesell's proffered reason was pretextual. Finally, she points to the rude email Schlegel sent to her in 2001 and the existence of the floor plan she allegedly discovered after she returned from medical leave, which did not include a place for her to sit.

We disagree that this evidence is sufficient to allow Capilli to meet her burden. Merely arguing that her disputes with her co-workers were minor is insufficient because, as we have explained, our function is not to determine whether Whitesell's decision to fire Capilli was "wise, shrewd, prudent, or competent." *Kautz,* 412 F.3d at 467. Instead, we must determine whether the evidence is sufficient to allow a reasonable jury to infer that Whitesell's decision was based on an improper motive. *Id.* We do not believe that the close temporal proximity between Capilli's termination and her medical leave is sufficient to draw

this inference because, as outlined above, Capilli's problems interacting with her co-workers at Whitesell are amply documented in the record and began well before she experienced medical problems. Nor would the email Schlegel sent to her in 2001 allow the jury to draw the necessary inference. This email had nothing to do with any request for medical leave. Indeed, Capilli admitted that Schlegel never denied her a request for time off to deal with a medical condition, and that he had been "patient and understanding" regarding her extended medical leave. (App. at 243.) She also testified that when she informed Schlegel that she needed additional surgery, he responded "fine, just let me know when your surgery is scheduled." (App. at 244.) Moreover, she conceded that the Whitesell officer who decided to fire her knew nothing of her need for additional time off.

Finally, Capilli's reliance on the floor plan is largely self-defeating. Again, she seems to imply that the temporal proximity between her request for additional leave and the firing raises an inference of retaliatory intent, but, by her own account, she saw the floor plan before anyone at Whitesell knew she would need additional time off, so, even if it did indicate that there was an intent to fire her, that intent was not grounded in a desire to retaliate for her seeking additional FMLA leave. In any event, Capilli did not produce at trial the floor plan omitting her name, nor did she produce any evidence demonstrating that the floor plan, if it did exist, was based on a discriminatory intent. In sum, Capilli did not meet her burden of showing that Whitesell's reasons for firing her were pretextual, and we will affirm the District

---

3. Capilli attempts to bolster her argument by saying that "even [the District Court] had issues with the justification presented by [Whitesell] for the termination." (Appellant Br. at 47.) Capilli misreads the District

Court's decision. The Court unequivocally stated that Capilli's evidence was "insufficient to overcome the legitimate non-retaliatory justification that was advanced by [Whitesell]." (App. at 41.)

Court's disposition of her FMLA retaliation claim.[4]

## B. Capilli's FMLA Interference Claim

■ We also conclude that the District Court properly granted summary judgment in favor of Whitesell on Capilli's claim that Whitesell interfered with her FMLA rights. To establish a claim for interference based on a failure to inform her of her FMLA rights, Capilli must show that Whitesell's failure to give her the required notification caused her injury. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir.2004). Capilli argues that Whitesell's failure to advise her of her FMLA rights caused her injury because, at the time she returned to work on October 23, she was still suffering from the effects of her illness, and she only returned to work because she felt pressured to do so by Whitesell. According to Capilli, had she been aware of her right under the FMLA to take additional leave, she would have done so, and thereby avoided the argument with her coworkers that led to her termination.

Similar to her retaliation claim, Capilli's own testimony precludes us from concluding that Whitesell's failure to advise her of her FMLA rights caused her any injury. At her deposition, Capilli testified unequivocally that she was able to return to work on October 23, and could not identify any conduct by anyone at Whitesell which made her feel pressured to return. In addition, she testified that she had read the publicly posted FMLA notice at Whitesell. In light of this testimony, we cannot conclude that Whitesell's failure to separately inform Capilli of her FMLA rights resulted in any prejudice to her, and we

will affirm the District Court's disposition of her FMLA interference claim.

## C. Capilli's Claim Under New Jersey Common Law

■ Capilli also challenges the District Court's decision granting summary judgment in favor of Whitesell on her claim under New Jersey common law. In *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505, 512 (1980), the New Jersey Supreme Court recognized a common law cause of action for wrongful discharge when an employee was discharged "contrary to a clear mandate of public policy." The New Jersey courts have held that a violation of the FMLA can be the basis of a viable *Pierce* claim. *Hampton v. Armand Corp.*, 364 N.J.Super. 194, 834 A.2d 1077, 1081 (2003). However, a plaintiff who elects to seek redress under the NJLAD, or another statutory remedy, may not simultaneously seek relief under *Pierce* if the sources of public policy on which she relies are "coterminous with [her] statutory claims." *Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 73 (3d Cir.1996) (citations omitted).

As we noted at the outset, the District Court granted summary judgment for Whitesell on Capilli's *Pierce* claim because it concluded that the claim was precluded by her statutory claim under the NJLAD. On appeal, Capilli contends that the District Court's decision was incorrect because, although including an NJLAD claim in her lawsuit would ordinarily preclude her from bringing a *Pierce* claim, once the District Court granted summary judgment for Whitesell on her NJLAD claim, her *Pierce* claim was no longer preempted.

---

**4.** Capilli also argues, *inter alia*, that Whitesell's reasons for firing her were pretextual because she was the only employee Robert Richards fired during his seventeen years at Whitesell, that Schlegel had never previously asked Hikade to document problems with a co-worker, and that Heitzman did not interview Capilli about the argument with her co-workers. We have examined these contentions and they do not alter our conclusion.

Capilli further argues that after the District Court dismissed her ADA and NJLAD claims, the FMLA became the sole source of her statutory remedies, and she further alleges that the FMLA does not provide for the tort causes of action available under New Jersey common law. Therefore, Capilli apparently argues, because a violation of the FMLA can establish a cause of action under *Pierce,* and because the FMLA and *Pierce* provide for different remedies, the two sources of relief are not coterminous, and she may seek relief under both.

We find it unnecessary to reach the merits of this argument. Even if Capilli is correct that she may simultaneously seek relief under the FMLA and *Pierce,* she admits that, at this stage of the litigation, the FMLA provides the only source of public policy supporting her *Pierce* claim. It follows that to succeed on her *Pierce* claim, she must show that Whitesell violated her rights under the FMLA. As we have already explained, she does not have a viable FMLA claim. Therefore, her claim under *Pierce* must fail. *See Armand,* 834 A.2d at 1081 (explaining that because the employee was not entitled to relief under the FMLA, he could not succeed on a *Pierce* claim based on the FMLA).

Accordingly, we will affirm the District Court.