**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1186-22

VALERIE CAMPIONE,

     Plaintiff-Appellant,

v.

ARIZONA BEVERAGES USA,
LIMITED LIABILITY
COMPANY, ARIZONA
BEVERAGE COMPANY, LLC,
ISLAM AHMED, both
individually and in his capacity
as supervisory personnel
and/or management,

     Defendants-Respondents.

_____

Submitted November 29, 2023 – Decided January 5, 2024

Before Judges Firko and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1163-22.

O'Connor, Parsons, Lane & Noble, LLC, attorneys for appellant (Gregory Brian Noble and Richard Daniel Bause, of counsel and on the briefs).

Vouté, Lohrfink, McAndrew, Meisner & Roberts, LLP, attorneys for respondents (Thomas E. Lamb II, of counsel and on the brief).

PER CURIAM

Plaintiff Valerie Campione appeals from a November 14, 2022 Law Division order dismissing her complaint against defendants Arizona Beverage USA and Arizona Beverage Company LLC (Arizona), improperly pled as her former employers, and manager, Islam Ahmed, for failure to state a claim upon which relief can be granted with prejudice and denying her cross-motion to amend the complaint in lieu of dismissal. We affirm.

I.

The following facts are alleged in the complaint. On January 13, 2020, plaintiff became employed by AZ Metro Distributors, LLC (AZ)[1] as a Route Sales Representative at its Edison location. On April 26, 2020, plaintiff claimed she was assaulted in a domestic violence incident. As a result of injuries arising out of the incident, plaintiff took off from work on April 27 and 28, 2020.

On April 29, 2020, plaintiff was called into a meeting with Ahmed and given a "written warning" about the days she took off related to the domestic violence incident. Plaintiff further alleged that after informing Ahmed she

---

[1] AZ is not named as a defendant in the complaint.

would need additional days off for court dates related to the incident, he "crassly" responded "although unfortunate, this couldn't come at a worse time."

On May 1, 2020, plaintiff contacted the human resources manager Robin McConnell, and informed her of the domestic violence incident and subsequent meeting with Ahmed. Plaintiff conveyed to McConnell that she was "not getting support from management for what had occurred" and the upcoming court dates related to the domestic violence incident. On May 4, 2020, plaintiff was terminated from her employment with AZ.

Nearly two years later, on April 19, 2022, plaintiff filed a one-count complaint in the Law Division against Arizona and Ahmed alleging a "violation of public policy common law Pierce[2] claim" on the grounds she was a domestic violence victim who required time off from work due to the incident and to attend court dates. Plaintiff alleged Arizona and Ahmed violated New Jersey common law, public policy, and the Court's decision in Pierce. Plaintiff sought back pay, front pay, benefits, compensatory, consequential, and punitive damages, along with attorney's fees and costs. Plaintiff conceded at the onset she did not qualify for leave time under the New Jersey Security and Financial Employment Act (NJ SAFE Act) because she was not employed by defendants

---

[2] Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 72 (1980).

(or AZ) for the one year time period required under N.J.S.A. 34:11C-2 to -4, but argued public policy in this State goes beyond the NJ SAFE Act for victims like herself, including the right and duty to attend court dates relating to a domestic violence incident.

Arizona and Ahmed filed an answer denying the allegations in the complaint but admitted Ahmed was a member of management. In their affirmative and other defenses, Arizona and Ahmed alleged the complaint failed to name AZ as a necessary party, warranting dismissal as a matter of law against the named defendants, and that plaintiff was not employed by Arizona. The answering defendants also alleged any decisions, actions, or omissions regarding plaintiff were "based upon legitimate, non-discriminatory business reasons" and that they maintained and complied with policies to prevent unlawful harassment, discrimination, or retaliatory conduct.

On August 22, 2022, Arizona and Ahmed moved to dismiss the complaint under Rule 4:6-2(e), arguing plaintiff did not identify any specific judicial decision, statement of common law, or public policy to support her Pierce claim. Plaintiff opposed the motion and filed a notice of cross-motion for leave to amend the complaint to assert claims against AZ in lieu of a dismissal of the matter. In her opposition brief, plaintiff argued that her Pierce claim was based

A-1186-22

on New Jersey public policy that "protects, encourages, and . . . requires public participation in the legal process without interference by employers." Plaintiff argued the "source" of this public policy is the NJ SAFE Act.

In support of her <u>Pierce</u> claim, plaintiff relied upon: (1) N.J.S.A. 2C:29-7, making it an offense to fail to appear when bail is imposed or a summons is issued; (2) N.J.S.A. 2C:29-9, making it a crime of contempt to disobey a judicial order; (3) N.J.S.A. 2B:20-17, requiring employers not to penalize employees for attending jury service; and (4) <u>Rule</u> 7:8-9, which allows the issuance of a bench warrant if a criminal defendant fails to appear in court.

On October 7, 2022, Judge Daniel R. Lindemann conducted oral argument on the motions. The judge instructed counsel to submit supplemental briefs on the issue of whether a <u>Pierce</u> claim that relies upon public policy contained in a New Jersey statute—the NJ SAFE Act—may proceed as a common law cause of action when the NJ SAFE Act already imposes requirements for bringing a cause of action.

In her supplemental brief, plaintiff asserted that even if the NJ SAFE Act precluded her <u>Pierce</u> claim under that statute, her "primary" <u>Pierce</u> claim is a separate and distinct claim and is grounded on New Jersey's public policy encouraging and requiring participation in court proceedings. Plaintiff argued

she was retaliated against for seeking time off from work to attend her domestic violence court proceedings, which is a violation of public policy as part of her primary Pierce claim. In addition, plaintiff averred the NJ SAFE Act specifically protects domestic violence victims' participation in the legal process. Plaintiff also posited she took leave related to the domestic violence incident that was unrelated to the court proceedings, thereby implicating the public policy advanced in the NJ SAFE Act, but not the public policy contained in her primary Pierce claim.

On November 4, 2022, the judge heard oral arguments a second time and reserved decision on the motions. On November 14, 2022, Judge Lindemann granted Arizona and Ahmed's motion to dismiss the complaint with prejudice and issued an order accompanied by a comprehensive written statement of reasons.

In analyzing plaintiff's primary Pierce claim, the judge found her reliance upon criminal statutes and a court rule was "inapplicable to the instant matter, and even if applicable, ultimately d[id] not reflect a public policy in New Jersey that protects, encourages, and . . . requires public participation in the legal process without interference by employers." Instead, the judge emphasized the cited statutes and court rule "represent a public policy in the [S]tate regarding

6

criminal matters and consequences for failing to appear or abide by court order." The judge highlighted that N.J.S.A. 2B:20-17 is "specific to required jury service" and does not articulate a policy that pertains to employers.

As to plaintiff's secondary Pierce claim based on the NJ SAFE Act, the judge determined that permitting this claim "would undermine the balance [the Legislature] sought to achieve in enacting the twelve-month limitation." The judge highlighted that under the NJ SAFE Act, "[a] private cause of action provided for in this section shall be the sole remedy for a violation of this [A]ct[,]" N.J.S.A. 34:11C-5(c), and "[a]dditionally, '[a]n action brought under this section shall be commenced within one year of the date of the alleged violation,'" N.J.S.A. 34:11C-5(b), confirming plaintiff's ineligibility from a procedural standpoint.

The judge found our decision in Hampton v. Armand Corp., 364 N.J. Super. 194, 197 (App. Div. 2003), instructive because plaintiff's Pierce claim cannot rely on a public policy established by a State statute, such as the New Jersey Family Leave Act (Family Leave Act)[3] with eligibility requirements she cannot meet. Judge Lindemann relied on Hampton in which we stated: "The [Family and Medical Leave Act of 1993 (FMLA)] establishes a clear mandate

---

[3]  N.J.S.A. 34:11B-1 to -16.

of public policy for 'eligible employees' wrongfully terminated pursuant to its provisions. That such policy exists, however, does not translate to a public policy that protects short term employees." Id. at 201.

The judge explained plaintiff's supplemental opposition was "unresponsive" to his direction to brief whether a Pierce claim that relies upon public policy "enshrined" in a New Jersey statute, such as the NJ SAFE Act, may proceed as a common law cause of action. Plaintiff also did not respond to defendants' discussion of Hampton. As a matter of law, the judge concluded plaintiff failed to allege a cognizable Pierce claim under either of her theories. Therefore, the court granted defendants' motion to dismiss the complaint with prejudice and denied plaintiff's cross-motion to amend the complaint as moot. Memorializing orders were entered. This appeal followed.

Plaintiff raises the following arguments for our consideration:

> (1) dismissal of the complaint with prejudice was unwarranted because the judge did not conduct a proper analysis of plaintiff's claim; and

> (2) the complaint clearly maintains that the termination of plaintiff's employment violated clear mandates of public policy in New Jersey that protect, encourage, and require public participation in the legal process without interference by employers.

Having carefully reviewed the record, we affirm primarily for the reasons expressed in Judge Lindemann's thorough statement of reasons. We add the following comments.

## II.

Our review of a Rule 4:6-2(e) motion to dismiss for failure to state a claim upon which relief can be granted is de novo. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). We "must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). To determine the adequacy of a pleading, we must decide "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown, 116 N.J. 739 at 746 (quoting Velantzas v. Colgate-Palmolive Co. Inc., 109 N.J. 189, 192 (1988)).

## A.

Plaintiff contends the judge erred in dismissing her complaint by failing to acknowledge the "primary" public policy her Pierce claim is based on is the State's clear mandate regarding the operation of the courts in allowing or

requiring public participation in proceedings that is unimpeded by any statutory eligibility requirements such as the "focused" public policy advanced by the NJ SAFE Act. Plaintiff argues the matter under review implicates two sources of law and how they interact: (1) the NJ SAFE Act and (2) the broad public policy within this State that protects, encourages, and requires public participation in the legal process without interference by employers.

The NJ SAFE Act establishes that "[a]ny employee of an employer in the State who was a victim of an incident of domestic violence [. . .] shall be entitled to unpaid leave of no more than [twenty] days in one [twelve]-month period, to be used in the [twelve]-month period next following any incident of domestic violence or any sexually violent offense as provided in this section." N.J.S.A. 34:11C-3(a). It further establishes that the unpaid leave may be taken as needed for the purpose of "attending, participating in, or preparing for a criminal or civil court proceeding relating to an incident of domestic or sexual violence." N.J.S.A. 34:11C-3(a)(6).

The Legislature defines an employee as employee as "a person who is employed for at least [twelve] months by an employer, with respect to whom benefits are sought under this act, for not less than 1,000 base hours during the immediately preceding [twelve] month period." N.J.S.A. 34:11C-2. The NJ

SAFE Act makes it illegal to "discharge, harass or otherwise discriminate or retaliate or threaten to discharge, harass or otherwise discriminate or retaliate against an employee with respect to the compensation, terms, conditions or privileges of employment on the basis that the employee took or requested any leave to which the employee was entitled." N.J.S.A. 34:11C-4.

It is undisputed that plaintiff does not meet the eligibility requirements established by the NJ SAFE Act as she was only employed by AZ for a period of four months prior to the domestic violence incident. Since plaintiff is barred from relief under the NJ SAFE Act, she contends the same remedy can be achieved under Pierce.

B.

In Pierce, the Supreme Court held "that an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." Pierce, 84 N.J. at 72. "The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." Ibid. "A salutary limiting principle is that the offensive activity must pose a threat of public harm, not merely private harm or harm only to the aggrieved employee." Mehlman v. Mobil Oil Corp., 153 N.J. 163, 188 (1998). The public policy must be "clearly identified and firmly grounded."

11

MacDougall v. Weichert, 144 N.J. 380, 391 (1996). "A vague, controversial, unsettled, and otherwise problematic public policy does not constitute a clear mandate." Id. at 392. "Unless an employee at-will identifies a clear, specific expression of public policy, that employee may be discharged with or without cause." Hampton, 364 N.J. Super. at 199.

Plaintiff's Primary Pierce Claim

Plaintiff argued the following three statutes and court rule support her primary Pierce claim:

The Bail Jumping Statute

[A] person set at liberty by court order, with or without bail, or who has been issued a summons, upon condition that he will subsequently appear at a specified time and place in connection with any offense or any violation of law punishable by a period of incarceration, commits an offense if, without lawful excuse, he fails to appear at that time and place.

[N.J.S.A. 2C:29-7.]

The Contempt Statute

A person is guilty of a crime of the fourth degree if the person purposely or knowingly disobeys a judicial order or protective order, [. . .], or hinders, obstructs, or impedes the effectuation of a judicial order or the exercise of jurisdiction over any person, thing, or controversy by a court, administrative body, or investigative entity.

12

[N.J.S.A. 2C:29-9.]

Plaintiff also cites an employment protection statute, which states "[a]n employer shall not penalize an employee with respect to employment, or threaten or otherwise coerce an employee with respect to that employment, because the employee is required to attend court for jury service," N.J.S.A. 2B:20-17, to support her argument and a court rule that permits the issuance of a bench warrant in a criminal proceeding when a defendant fails to appear in court. R. 7:8-9.

Plaintiff's primary Pierce claim lacks merit. Pieced all together, plaintiff contends these four sources create a broad public policy in this State that encourages, supports, and even requires public participation at court proceedings without employer interference. But plaintiff failed to satisfy her burden to "identif[y] a clear, specific expression of public policy" prohibiting the discharge of a short-term employee taking time off to attend hearings related to a domestic violence incident. See Hampton, 364 N.J. Super. at 199. Moreover, plaintiff's attempt to combine fragmented sections of statutes and rules related to bail jumping, contempt of court, bench warrants, and jury duty—none of which are factually relevant here—to create a public policy scheme

regarding participation in the legal process does not establish a prima facie primary <u>Pierce</u> claim or competent evidence to defeat dismissal.

Plaintiff's Secondary Pierce Claim

Plaintiff reiterates her argument on appeal that she has established a secondary <u>Pierce</u> claim regarding the public policy contained in the NJ SAFE Act. In <u>Hampton</u>, the plaintiff asserted a claim for wrongful discharge for taking medical leave in violation of public policy, based on the FMLA. <u>Id.</u> at 196-97. However, the plaintiff did not have a viable claim under the FMLA because she had not been employed for twelve months. <u>Id.</u> at 197. We rejected the plaintiff's claim because "[t]he FMLA establishes a clear mandate of public policy for 'eligible employees' wrongfully terminated pursuant to its provisions," but does not establish public policy for ineligible employees. <u>Id.</u> at 201. We reasoned that an employee who is ineligible for relief under the FMLA should not be able to obtain relief under <u>Pierce</u>. <u>Ibid.</u>

Applying these standards, we conclude plaintiff's secondary <u>Pierce</u> claim is devoid of merit. Plaintiff failed to produce any evidence that supported this claim, and significantly, she failed to "identif[y] a clear, specific expression of public policy" in favor of wrongful discharge. <u>Id.</u> at 199. In addition, plaintiff's <u>Pierce</u> claim that her termination violated public policy was barred by virtue of

14

her failure to establish an underlying NJ SAFE Act claim.  See Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 90 (App. Div. 2001) (stating a plaintiff is barred from raising a Pierce claim where a public policy interest is exclusively protected by a statute).  Moreover, plaintiff's admission that she did not qualify to invoke the protection of the NJ SAFE Act based on her four-month employment with AZ belied any claim under Pierce.

Plaintiff asserts the statutory authority relied upon does not have to be directly on point to the given circumstance to satisfy the Pierce standard.  She relies on MacDougall, where the Court considered a Pierce claim brought on behalf of the plaintiff, who operated as a salesperson for a real estate firm and an elected member of a local municipality.  Id. at 385.  As a member of the municipal council, the plaintiff voted for a parking ordinance that was opposed by a client of the real estate firm.  He was subsequently discharged from the law firm because of his vote.  Id. at 387.

The plaintiff relied on two criminal statutes to support his Pierce claim. Id. at 394.  The Court ultimately determined that based on the legislation's extensive history and its statutory language and structure, there was "a clear mandate of public policy that serves to protect public officials holding

A-1186-22

legislative office in the exercise of official duties relating to legislative matters." Id. at 398.

MacDougall is distinguishable from the matter under review as the public policy plaintiff attempts to create has not been established as a clear mandate of public policy, and is not supported by any legislative history. Plaintiff also relies on MacDougall to argue that the judge erred because criminal statutes can suggest public policy under a civil Pierce claim. But here, as Judge Lindemann found, plaintiff did not jump bail or fail to appear in court and was not called for jury duty, which makes the four sources she relied upon factually irrelevant to the analysis.

Finally, to support a Pierce claim, a plaintiff must show that he or she made a sufficient expression of a disagreement with a corporate policy, directive, or decision based on a clear mandate of public policy derived from legislation, administrative rules, regulations, decisions, or judicial decisions. Tartaglia v. UBS PaineWebber Inc., 197 N.J. 81, 109 (2008). "[A] complaint to an outside agency will ordinarily be a sufficient means of expression, but a passing remark to co-workers will not. A direct complaint to senior management would likely suffice, but a complaint to an immediate supervisor generally would not." Ibid.

Here, the record only mentions that plaintiff contacted McConnell and informed her about the lack of support she received from management regarding the domestic violence incident. This conversation does not express the level of disagreement needed to support plaintiff's <u>Pierce</u> claim.

We conclude the factual findings of Judge Lindemann are fully supported by the record, and the legal conclusions drawn therefrom are unassailable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1186-22